STATE OF NEBRASKA EX REL. VIOLA BEESON ET AL.,
RELATORS, V. FRANK MARSH, SECRETARY OF STATE OF
THE STATE OF NEBRASKA, RESPONDENT.

34 N. W. 2d 279

Filed October 12, 1948.    No. 32571.

*Ginsburg & Ginsburg,* for relators.

*Walter R. Johnson,* Attorney General, and *Robert A. Nelson,* for respondent.

Heard before Simmons, C. J., Paine, Carter, Messmore, Yeager, Chappell, and Wenke, JJ.

Simmons, C. J.

This is an original action in which relators seek a peremptory writ of mandamus to compel the respondent Secretary of State to accept, file, and process nominating petitions, and to certify and cause to be placed on the ballot for the election to be held November 2, 1948, the names of the first six relators as presidential electors or the names of Henry A. Wallace and Glen H. Taylor as candidates for President and Vice President of the United States. The respondent answered. The cause is submitted here upon the petition and answer, the allegations of fact not being controverted. The issues presented are questions of law. We deny the issuance of the writ.

The Progressive Party held a convention in Philadelphia, Pennsylvania, on July 23, 24, and 25, 1948, at which it nominated Henry A. Wallace as its candidate for President of the United States and Glen H. Taylor as its candidate for Vice President of the United States. The names of the candidates have been certified to the Governor and to the Secretary of State by the officers of the National Convention of the Progressive Party.

At the primary election held in Nebraska on April 13, 1948, no delegates or alternates to the said national convention were elected and hence there were no duly elected delegates from Nebraska in attendance at or participating in that convention.

The Progressive Party called a convention to be held in Omaha, Douglas County, Nebraska, for the purpose of organizing a political party within this state, pursuant to section 32-1135, R. S. Supp., 1947. At that convention not to exceed 283 qualified electors signed the agreement and roster to form such new party and support its nominees at the convention. The required 750 electors, signing the roster and agreement, not having been se-

cured, the movement to organize the Progressive Party as a new political party in this state failed.

Prior to September 23, 1948, petitions directed to respondent were circulated among the electors, in the following words:

### "CERTIFICATE OF NOMINATION

"To the Secretary of State of Nebraska:

"Pursuant to the provisions of Section 1107 of Chapter 32 of the revised statutes of Nebraska, the undersigned, electors of the State of Nebraska, hereby nominate the following named person for the office of presidential elector to be voted for at the general election to be held on the Second day of November, 1948, viz.:

| Name | Residence | P.O. Address | Business |
|---|---|---|---|
| Mrs. Viola Beeson | 2020 Spencer, Omaha | 2020 Spencer, Omaha | Housewife |
| Ben Martin | 5443 S.24th St., Omaha | 5443 S.24th, Omaha | Storekeeper |
| Ed Kohler | Schuyler, Nebr. | Schuyler, Nebr. | Farmer |
| Rev. Arthur Stearns | 2119 Emmett, Omaha | 2119 Emmett, Omaha | Retired minister, presently a painter |
| Carl Hansen | Newman Grove, Nebr. | Newman Grove, Nebr. | Farmer |
| James Reed | 1550 So.28th St., Omaha | 1550 So. 28th St., Omaha | Carpenter |

"The undersigned group of petitioners hereby certify that their candidate for the office of President of the United States is Henry A. Wallace, who resides at South Salem, New York, and whose occupation is that of farmer, and that their candidate for Vice-President of the United States is Glen H. Taylor, whose residence is Pocatello, Idaho, and whose occupation is that of United States Senator.

"In witness whereof the undersigned have signed this certificate of nomination.

Name    Residence    P. O. Address    Place of Business
    (City or Town)    (Street and    (City or Town)"
                  Number or R.F.D.)

More than 1,500 qualified electors signed these petitions, together with a statement of their residence, P. O. address, and place of business. These petitions were presented to the respondent on September 23, 1948, who refused to accept and file the same or to process them, and refused to certify to the county clerks the names of the candidates named therein for President and Vice President, and the names and descriptions of the relators as nominees for the office of presidential electors. The relators are willing to accept and file written notice of the acceptance of said nomination.

Relators seek a writ commanding the respondent to accept, process, and file the nominating petitions; and to certify to the county clerks the names of Henry A. Wallace and Glen H. Taylor as candidates for President and Vice President of the United States upon the presidential ticket, or in the alternative to certify the names and descriptions of the six nominees for said office as candidates for presidential electors, pledged to cast their votes for Henry A. Wallace and Glen H. Taylor.

The nominating petition, heretofore set out in full, which the relators ask that the respondent be commanded to accept, process, and file, invokes the provisions of section 32-1107, R. S. Supp., 1947. It undertakes to nominate pursuant to that section the first six relators "for the office of presidential elector." It does not identify the electors sought to be so nominated with the Progressive Party which held a convention at Philadelphia in July of this year, and it does not purport to pledge said proposed electors or show that said proposed electors are pledged to cast their votes in the electoral college for Mr. Wallace and Mr. Taylor. It contains only a statement of fact that Mr. Wallace and Mr. Taylor

are the candidates of the petitioners for the offices of President and Vice President. It makes no request or demand that the names of Mr. Wallace and Mr. Taylor be placed on the ballots.

However, by brief and oral argument relators contend that the first six named relators are entitled to be placed on the ballot as candidates for presidential electors because of the provisions of section 32-1107, R. S. Supp., 1947, together with sections 32-219 and 32-924, R. S. 1943. They likewise contend that because the officers of the National Convention of the Progressive Party have certified to the Governor and the Secretary of State the names of Mr. Wallace and Mr. Taylor as its candidates for President and Vice President, as provided in section 32-301, R. S. 1943, the names of such candidates must be placed on the ballot in this state.

Article II, section 1, of the Constitution of the United States provides in part: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector."

The Supreme Court of the United States in McPherson v. Blacker, 146 U. S. 1, 13 S. Ct. 3, 36 L. Ed. 869, has construed this provision and held: "The Constitution does not provide that the appointment of electors shall be by popular vote, nor that the electors shall be voted for upon a general ticket, nor that the majority of those who exercise the elective franchise can alone choose the electors. It recognizes that the people act through their representatives in the legislature, and leaves it to the legislature exclusively to define the method of effecting the object." It further held that the word "appoint" " * * * was manifestly used as conveying the broadest power of determination."

The question then is—what manner of appointment

of electors has the Legislature of this state directed?

The Legislature has recognized the existence of political parties and has directed the appointment of electors in part through the medium of political parties. It has authorized and outlined the procedure for the formation of new political parties in this state. § 32-1135, R. S. Supp., 1947. It has provided that existing political parties shall, at their post-primary convention, "select electors for President and Vice President of the United States, the names of whom shall be certified to the Governor by the officers of such convention," § 32-1171, R. S. Supp., 1947; that "Certificates of nomination for a new party may be filed with the Secretary of State or the county or municipal clerk * * * as the case may require," § 32-1134, R. S. Supp., 1947; and that "All nomination papers shall be filed as follows: (1) for officers elective in more than one county, * * * in the office of the Secretary of State, * * *." § 32-1120, R. S. 1943. It has directed the form of the official ballot and, applicable here, that "(3) if the election be in a year in which a President of the United States is to be elected, in spaces separated from the foregoing by a heavy black line and entitled 'Presidential Ticket,' in black type not less than eighteen point, shall be the names and spaces for voting for candidates for President and Vice President; the names of candidates for President and Vice President for each political party shall be grouped together, each group enclosed with brackets with one square to the left in which the voter indicates his choice, and the party name to the right according as near as possible to the following form or schedule:

JOHN DOE, President

☐                                                    Republican

RICHARD ROE, Vice President

with a heavy line across the column, separating the group of the different political parties; no blank lines are to be left for writing in names for President and

Vice President; * * * *." § 32-503, R. S. 1943. It has directed that at the general election "each presidential elector nominated by any party or group of petitioners shall receive the combined vote of the electors of the state for the candidates for President and Vice President of such party or group of petitioners, and a vote cast for the candidates for President of the United States shall be a vote for the electors of the respective party or group of petitioners." § 32-219, R. S. 1943.

The Legislature has directed that after the election the county canvassing board shall on a separate sheet make an abstract of the votes cast for President and Vice President. § 32-919, R. S. Supp., 1947. It has directed that a copy of the abstract so made shall be transmitted to the Secretary of State. § 32-923, R. S. 1943. It has directed that the votes cast for President and Vice President shall be canvassed by a board of canvassers, consisting of the Governor, Secretary of State, Auditor of Public Accounts, State Treasurer, and Attorney General, and "* * * the return thereof shall be a canvass and return of the votes cast for the electors of the same party or group of petitioners respectively, and the certificate of such election made by the Governor shall be in accord with such return." § 32-924, R. S. 1943. It has likewise provided in sections 32-1501, 32-1502, and 32-1503, R. S. 1943, for the notice of appointment of the electors, their meeting procedure, and the election by them.

The summary of this procedure is that the electors are nominated by political parties organized in this state, and while in practice the voters vote directly for the candidates of a party for President and Vice President, the legal effect of their vote is to vote for the electors of the party whose candidates are named on the ballot.

The question then is—have the relators brought themselves within the provisions of the law as directed by the Legislature?

The relators first rely upon section 32-1107, R. S.

Supp., 1947. This section provides for the nomination of candidates by petition "except candidates whose nomination is expressly provided for by specific statutory provision relating to a specific office"; that candidates nominated under its provisions shall be termed "candidates by petition" and upon the ballot there shall be printed after their names the words "By petition." It is clear that this section has no applicability to the petition here presented. The nomination of presidential electors is expressly provided for by specific statutory provisions relating to that specific office as has been pointed out. The provision that the names of the candidates shall appear on the ballot followed by the words "By petition" is in direct conflict with the specific provision as to the form of the ballot hereinabove quoted. The section obviously refers to candidates who are not the candidates of political parties.

The relators also rely upon the language contained in section 32-219, R. S. 1943—"each presidential elector nominated by any party or group of petitioners," and in section 32-924, R. S. 1943, that the canvass of the votes for candidates for President and Vice President "shall be a canvass and return of the votes cast for the electors of the same party or group of petitioners * * *." Relators contend that these provisions demonstrate a legislative intent that candidates for presidential electors may be nominated by a "group of petitioners" and that they (the first six relators) have been nominated by a group of petitioners and hence are entitled to a place on the ballot.

It, of course, is clear that the 1,500 petitioners whose names are on the petitions involved herein are grouped together on 100 sheets of paper comprising the entire petition. However, that does not constitute them a "group of petitioners" within the meaning of the statutes involved. Webster's New International Dictionary, Second Edition, Unabridged, defines the noun "group" as "An assemblage of persons or things regarded as a

unit because of their comparative segregation from others; * * *." By statute a political party is "an assemblage or organization of electors by the law designated as such." § 32-1103, R. S. 1943. The language "group of petitioners" came into the statutes involved by amendment in 1927. Laws 1927, c. 105, p. 287. The statute which, as amended, became section 32-219, R. S. 1943, before amendment was section 1918, Comp. St. 1922, and provided: "In the year nineteen hundred and twenty and every four years thereafter, the governor shall appoint as electors of president and vice-president, those persons selected in the preceding delegate state convention by the political party whose candidates for president and vice-president received the highest number of votes at the general election held in the within year and years, on such day as congress may appoint."

It is noted that by section 1918, Comp. St. 1922, the Governor was limited in his appointment of electors to those selected in a preceding delegate state convention of the successful political party. Obviously that language did not include the nominees of a new political party organized under the laws of this state which had not held a delegate state convention. By the 1927 amendment, the Legislature removed the restriction, retained the word "party" in its original meaning, and added the words "group of petitioners." Section 2041, Comp. St. 1922, likewise was amended so as to reconcile it with the amendment to section 1918.

The legislative meaning of the words "group of petitioners" at the time it was used in the 1927 act becomes clear upon an examination of other provisions of the statute as they then existed. The statutes then provided for the organization of a new political party. §§ 2125 and 2126, Comp. St. 1922. Section 2127, Comp. St. 1922, provided that candidates of a new party "shall be required to file nomination papers signed by at least fifty per cent of those who subscribed the agreement to form such new party." In short, the method then provided

for the nomination of candidates by a new party was by petition of at least fifty percent of those who in convention met and formed the new party. The group of petitioners represented the new political party formed under the laws of this state and made the nomination for the new party by petition. Section 2127, Comp. St. 1922, was amended in 1929 (Laws 1929, c. 100, p. 368), and the above requirement of nomination by petition was repealed leaving in force the provisions of section 2124, Comp. St. 1922, that certificates of nomination of a new party may be filed with the Secretary of State.

While the method of making the nomination has been changed, the meaning of the provision remains. We find nothing to indicate a contrary legislative intent. To hold as relators contend would be to say that the Legislature, after having directed in detail the method whereby established and newly-formed political parties were to nominate presidential electors, then, by the use of the words "group of petitioners," intended to permit an unorganized number of electors to nominate presidential electors, and thereby in effect nullify all the directions of the Legislature in that regard. Such a legislative intent is not found in the statutes.

Section 32-301, R. S. Supp., 1947, provides as follows: "Thirty days previous to any election at which any United States officer, (including especially candidates for President and Vice President, which candidates shall have been previously certified to him by the officers of the different national conventions of the different political parties within and for the United States) or state officer is to be elected, the Governor shall issue his proclamation designating all the offices to be filled by vote of all the electors of the state, or by those of any congressional, legislative or judicial district, and transmit a copy thereof by mail to the county clerk of each county."

Relators here urge that because of the language in parentheses in the above section, and because the officers of the National Convention of the Progressive Party have

certified to the Governor and respondent the names of Mr. Wallace and Mr. Taylor as its candidates for President and Vice President, and because of the nominations made in the petition herein discussed, the respondent is required to certify to the county clerks the names of Mr. Wallace and Mr. Taylor as candidates for President and Vice President, pursuant to the provisions of section 32-1166, R. S. Supp., 1947. The requirement of section 32-301, R. S. Supp., 1947, is clearly for the information of the Governor in the issuance of his election proclamation. It does not require that he do anything with reference to the certified candidates.

There is a fundamental reason why the filing of the certificate by the officers of the national convention of a political party is not alone sufficient to entitle its nominees to a place on the ballot in this state. Article II, section 1, of the Constitution of the United States, hereinbefore set out, leaves to the Legislature of the state the manner of determining how "Each State" shall appoint its presidential electors. It is a matter within the control of the state Legislature. Pursuant to that provision the Legislature of this state has directed the manner of the appointment. To accept the contention that the names of Mr. Wallace and Mr. Taylor shall be placed on the ballot on the nomination certificate of officers of a national convention would be to nullify the directions of the Legislature in that regard. We need not determine whether or not the Legislature could so direct. Clearly they have not done so. A contrary determination obviously is indicated by the provisions of section 32-1130, R. S. 1943, which is as follows: "No person shall be entitled to or allowed to file a nomination certificate, or to have his name placed upon a primary election ballot for any primary election to be held, unless the political party which he states in said affidavit he affiliates with, polled at the last election before the primary election to be held, at least five per cent of the entire

vote in the state, county or subdivision or district in which he seeks the nomination for office."

Assuming that a political party in this state failed to poll the required number of votes provided by the act, then, if relators' contentions are correct, the officers of a national convention of that party by certifying the names of candidates for President and Vice President to the Governor would thereby be able to keep the party name and party candidates on the ballot, notwithstanding the "at least five per cent of the entire vote" provision of the statute.

There are other reasons why the names of Mr. Wallace and Mr. Taylor cannot be placed on the ballot in this state in the manner followed by relators. Section 32-503, R. S. 1943, provides that the names of the candidates for President and Vice President of each party shall be grouped together and followed by the party name. The certificates filed with the Governor and respondent designate Mr. Wallace and Mr. Taylor as the candidates of the Progressive Party, but there is no such party organized in this state. To comply with the statute, the respondent would be required to follow the names with the name "Progressive Party." We find no authority for him to do so. The relators suggested at the bar of the court that the names alone be placed on the ballot. To do so would be to violate the provisions of the statute.

Section 32-503, R. S. 1943, provides that "no blank lines are to be left for writing in names for President and Vice President." The reason for that is patent. Should names be so written in, there would be no "electors of the same party or group of petitioners" for whom the write-in votes could be canvassed and returned, and there would be no electors nominated in the manner directed by the Legislature, concerning whom the certificate provided for in section 32-924, R. S. 1943, could be issued.

The same situation would arise if the names of Mr. Wallace and Mr. Taylor were placed on the ballot, either

with or without the designation of the Progressive Party. The petition presented to the Secretary of State, even if accepted, would not meet this requirement. It does not identify the proposed nominees for presidential electors with the Progressive Party or any other party, nor even with the candidacies of Mr. Wallace and Mr. Taylor. It merely states that Mr. Wallace and Mr. Taylor are the candidates of the petitioners.

In brief, the manner directed by the Legislature of the appointment of presidential electors in this state contemplates the creation and existence of political parties in this state, the nomination by such parties of presidential electors, the placing of the names of candidates for President and Vice President of such parties on the ballot with the party designation of each, and the counting of the ballots cast for President and Vice President for the electors of the party.

It is obvious that relators and the petitioners have failed to follow the procedure directed by the Legislature, have no right to enforce the procedure selected by themselves, and accordingly have no right to the issuance of the writ which they seek.

The relators contend that if the statutes are construed so as not to permit the nomination of candidates for presidential electors of electors not affiliated with any party, it denies the relators, the petitioners, and the electors the right to vote for whomsoever they may choose for such offices, and that so construed the statutes are in violation of sections 1, 3, and 22, of article I of our Constitution and the fourteenth amendment to the Constitution of the United States.

Relators in their argument here refer only to article I, section 22, of the Constitution. The relators make no argument in their brief with reference to the claimed violation of the fourteenth amendment to the Constitution of the United States.

It would seem that the relators misconceive the scope of article II, section 1, of the Constitution of the United

States and the powers therein granted to the Legislature. That provision is exhaustively treated in McPherson v. Blacker, *supra*. As was said there, so we say here, the question presented is not one of policy but of power. The Supreme Court of the United States held that the provision "leaves it to the legislature exclusively" to define the method of effecting the appointment of electors; that "practical construction of the clause has conceded plenary power to the state legislatures in the matter of the appointment of electors"; and that the words "in such Manner as the Legislature thereof may direct" operate as a "limitation upon the State in respect of any attempt to circumscribe the legislative power * * *." We must construe the power of the Legislature and our statutes in accord with those pronouncements.

Further, the Supreme Court of the United States in the McPherson case, directly answering a charge that the fourteenth amendment was violated by a denial of the right to vote for presidential electors, said: "There is no color for the contention that under the amendments every male inhabitant of the State being a citizen of the United States has from the time of his majority a right to vote for presidential electors." That holding disposes of relators' unpressed contention that they have a constitutional right to vote for presidential electors.

Article I, section 22, of our Constitution provides: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." In accord with the holding in the McPherson case this provision may not operate to "circumscribe the legislative power" granted by the Constitution of the United States. It becomes unnecessary therefore to consider whether or not there is a conflict between the method of appointment of presidential electors directed by the Legislature and the state constitutional provision.

The writ of mandamus prayed for by relators is denied.

DENIED.