**Delmas McCLENDON et al., Petitioners,**

**v.**

**Lee SLATER, Secretary of the State Election Board, et al., Respondents.**

**No. 49974.**

Supreme Court of Oklahoma.

Aug. 19, 1976.

Rehearing Denied Sept. 24, 1976.

Robert Lee Blackwood, Tulsa, for petitioners.

Michael Cauthron, Asst. Atty. Gen., State of Oklahoma, for respondents.

DOOLIN, Justice.

To what extent may this sovereign state regulate the presidential election process by its election laws?

The petitioners in this matter, who seek mandamus directed to the Secretary of the State Election Board to place them on the

general election ballot of November 1976, suggest that no regulation is permissible. They submit that the power to regulate and legislate as to rules concerning presidential electors has been reserved in the people under the Ninth Amendment to the Constitution of the United States and Art. V, § 1 of the Constitution of the State of Oklahoma.

They also argue the 1st and the 14th Amendments to the Constitution of the United States guarantee to petitioners free speech and the right to associate and to equal protection of the laws, thus rendering Oklahoma's statutes unconstitutional when they attempt the regulation of the election of presidential electors.

We disagree with both of petitioners' contentions.

▬ Art. II, § 1, cl. 2 of the United States Constitution provides:

"Each State shall appoint in such Manner as the *Legislature* thereof may direct, a Number of Electors equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: * * *" (Emphasis supplied).

This article is the source of the state's power, if any, to regulate presidential elections. Art. II cannot and does not enumerate a limitation, lowering in rank or disparagement of the rights of the people guaranteed or retained under the 9th Amendment to the United States Constitution.

*Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) acknowledges this constitutional provision grants extensive power to the state to pass laws regulating the selection of electors.[1]

Indeed it has been said, speaking of the power conferred to the states by Art. II of the United States Constitution, in *McPherson v. Blacker,* 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1908):

"The clause of the Constitution does not read that the people or the citizens shall appoint, but that 'each state shall' . . . in such manner as the legislature thereof may direct . . ." (Quotation theirs).

▬ It is fundamental that each state and its Legislature, under a Republican form of government possess all power to protect and promote the peace, welfare and safety of its citizens. The only restraints placed thereon are those withdrawn by the United States Constitution and the state's fundamental law. Art. V, §§ 1 and 2 express that these reservations or withdrawals in the people under the Constitution of the State of Oklahoma are two in nature and as explicitly set out in Art. V, § 2 to be the "initiative" and the "referendum" processes. For our purpose, no other withdrawal or restraint is placed upon the broad fundamental powers of this state's Legislature by Art. V of the State Constitution.

Prior to 1960 and from the time of statehood Art. III § 5 of the Oklahoma Constitution mandated a primary election system for all candidates including presidential electors. At the primary election on July 5, 1960, state question 388 amending Art. III § 5 was approved by the people and provided a system of nomination for presidential electors by certification to the Secretary of the State Election Board. In both constitutional provisions the right of the people to place on the ballot by petition any non partisan candidate was specifically recognized. 26 O.S.Supp.1975 § 10–101[2]

---

1. The Supreme Court of Nebraska in 1948 said:

This clause recognizes "that the people act through their representatives in the Legislature and leaves it to the Legislature exclusively to define" *State ex rel. Beeson v. Marsh,* 150 Neb. 233, 34 N.W.2d 279 (1948).

2. 26 O.S.Supp.1975 § 10–101. "Nomination of Presidential Electors-Certification: The nominees for Presidential Electors of any recognized political party shall be selected at a statewide convention of said party in a manner to be determined by said party. The nominees for Presidential Electors shall be

as thereafter enacted has not in our opinion restricted or narrowed the constitutional provisions of the 1960 amendment.

■ We hold that 26 O.S.Supp.1975 § 10–101 is a proper exercise of the power granted by Art. II of the United States Constitution to the State Legislature, is not restrictive but is definitive and a reasonable regulation of the method of selection of the electors of a recognized political party and not in conflict with the Oklahoma Constitution.

We would affirm our statement in *Lillard v. Cordell*, 200 Okl. 577, 198 P.2d 417 (1948) that the Legislature has the duty to direct the manner of choosing presidential electors.

This is not to say that there are no limitations upon the power of the state to regulate the selection of presidential electors. In *Williams v. Rhodes,* supra, the Supreme Court spoke to these matters. That case establishes these criteria for such legislation.

■ The legislative power is subject to the limitation that it may not be exercised in a way that violates other specific provisions of the Constitution.

■ While the power of the states, under Article II § 1, of the Federal Constitution, to pass laws regulating the selection of presidential and vice-presidential electors is extensive, it cannot be exercised in such a way as to violate express constitutional commands that specifically bar states from passing certain kinds of laws.

The Fifteenth and Nineteenth Amendments are intended to bar the Federal Government and the states from denying the right to vote on grounds of race and sex in presidential elections.

■ No state can pass a law regulating elections that violates the equal protection clause of the Fourteenth Amendment but this does not make every minor difference in the application of laws to different groups a violation of the Federal Constitution. However, invidious distinctions cannot be enacted without a violation of the clause.

■ Legislation may not infringe on freedom of association, including the right of individuals to associate for the advancement of political beliefs. This right is protected by the First Amendment against federal encroachment, and by the Fourteenth Amendment against infringement by the states.

■ We do nǒt find Oklahoma's recently enacted election code [3] to be invidiously discriminatory nor unduly burdensome under the criteria demanded by *Williams v. Rhodes.*

■ We believe this state has the duty to regulate all election processes and that the State of Oklahoma has exercised its "compelling interest" reasonably and properly through the election code and under

certified by said party's chairman to the Secretary of the State Election Board no fewer than ninety (90) days nor more than one hundred eighty (180) days from the date of the General Election at which candidates for Presidential Electors shall appear on the ballot. Failure of a political party to properly certify the names of its nominees for Presidential Electors within the time specified shall bar such party from placing any candidates for Presidential Electors on the ballot at said election."·

26 O.S.Supp.1975 § 10–102. "Oath for Presidential Electors: Every nominee for Presidential Elector shall subscribe to an oath, stating that said nominee, if elected, will cast his ballot for the persons nomi-

nated for the offices of President and Vice-President by the National convention of his party. Said oath shall be notarized by a notary public and filed with the Secretary of the State Election Board no fewer than ninety (90) days prior to the General Election. Failure of any nominee to take and file said oath by said date shall automatically vacate his nomination and a substitute nominee shall be selected by the state central committee of the appropriate political party. It shall be the duty of the Secretary of the State Election Board to notify the chairman of the state central committee of the failure of any nominee to file said oath."

3. 26 O.S.Supp.1975 § 1–101 et seq.

the Constitutions of the United States and Oklahoma. We have insured the "most precious right" guaranteed to all citizens, the right of franchise.

Petitioners argue that our decision in *McCarthy v. Slater* et al., 553 P.2d 489 decided July 23, 1976, has insured them a place on the November 1976 presidential ballot. We do not agree.

*McCarthy* stands for the proposition that persons who are registered as independents are entitled to a place on the presidential ballot as independent electors pledged to a serious independent candidate with no party affiliation.

In the case before us the petitioners scrupulously followed the filing procedures outlined in the State Election Code for candidates of political parties. Respondent does not contest the affidavit of any elector petitioner to the effect he is a nominee of the American Party for presidential elector and if elected will cast his vote for that party's Presidential and Vice-Presidential nominees.

Neither does respondent challenge the timeliness of filing affidavits or notification by the American Party to the Secretary of the State Election Board under 26 O.S.Supp.1975 § 10–101. Petitioners do not claim to have filed a declaration of candidacy as required by 26 O.S.Supp.1975 § 5–112[4] with a supporting petition or alternative cash deposit, as found necessary and proper for "independents" in the *McCarthy* case.

Even if it can be successfully argued that members of the American Party are not registered as independent voters by virtue of 26 O.S.1975 Supp. § 1–110,[5] this does not alter or efface their admitted and undisputed allegiance to and membership in the American Party. Petitioners tender the Constitution of the American Party and unequivocally state: "We are in fact a party." In *McCarthy* the petitioner electors are pledged to an *independent candidate*. Petitioners in this case are pledged to avowed *candidates of the American Party*. Herein lies the distinction.

We find the petitioners filed for a place on the ballot as electors as members and nominees of the American Party. They do not seek to be placed on the ballot pledged to independent candidates but rather to candidates who are standard bearers of the American Party. This position is borne out by the uncontested statements presented by each petitioner to the State Election Board and by the statements and arguments made at the hearing on this application. Petitioners totally fail to act as independents.

We are not unmindful of petitioners' argument that because they sought no candidate for state office or to put up no slate of candidates for the various county, state or municipal races in the November election, they are not a political party but nominees of a "special character" for "presidential electors." Such argument is without merit if the Constitution of the United

---

4. 26 O.S.Supp.1975 § 5–112. Petitions and filing fees:

"A Declaration of Candidacy must be accompanied by a petition supporting a candidate's filing signed by five percent (5%) of the registered voters eligible to vote for a candidate in the first election wherein the candidate's name could appear on the ballot, as reflected by the latest January 15 registration report; or by a cashier's check or certified check in the amount of Two Hundred Dollars ($200.00) for candidates filing with the Secretary of the State Election Board, or in the amount of Fifty Dollars ($50.00) for candidates filing with the sec-

retary of a county election board; provided, however, such cashier's check or certified check shall be in the amount of One Thousand Five Hundred Dollars ($1,500.00) for candidates for Governor."

5. 26 O.S.Supp.1975 § 1–110. Changes in party affiliation: "The secretary of each county election board shall, within sixty (60) days after such proclamation by the State Election Board, change to Independent the party affiliation on the registration form of each registered voter of a political party which ceases to be a recognized political party."

States, Art. II, § 1, cl. 2 gives to the states, reasonable regulatory powers over presidential elections.

■ The American Party ceased to be recognized when it failed to receive 10% of the total vote cast [6] under 26 O.S.Supp. 1975 § 1–109.[7] Neither did it comply with requirements of 26 O.S.Supp.1975 §§ 1–107, 1–108 [8] to form a new political party.

*McCarthy* does not overrule or destroy the reasonable regulatory power vested in this state. *Williams v. Rhodes,* supra.

WRIT DENIED.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER and SIMMS, JJ., concurs.

BARNES, J., concurs in result.

HODGES, V. C. J., dissents.

HODGES, Vice Chief Justice (dissenting).

I dissent for the reason the Constitution of the State of Oklahoma has prescribed the manner and procedure for the nomination of presidential electors.

Art. 3, § 5 of the Oklahoma Constitution specifically states that presidential electors "shall be nominated by the regularly called conventions of the *various political parties.*" (Emphasis supplied)

Opposed to the above provision of the Constitution, 26 O.S.1971 § 10–101 places a limitation on the nomination of presidential electors to only those who are members of a *recognized political party.*

The constitutional provision does not restrict the office of presidential elector to recognized parties, but specifically provides for their nomination from all of the various parties. Therefore, § 10–101 is an unconstitutional infringement of the rights of members of a political party that is not recognized by the State of Oklahoma, thereby depriving them of their right of ballot access for presidential electors.

It also should be pointed out that by statute, if a person is not a member of a "recognized political party," then his status

**6.** In this connection petitioners offered no objections to our taking judicial notice of the results of preceding elections. Cf. present code to the previous election law, 26 O.S.1971 § 112.

**7.** § 1–109. Party ceases to exist. "Any recognized political party whose nominee for Governor or nominees for electors for President and Vice-President fail to receive at least ten percent (10%) of the total votes cast for said offices in any General Election shall cease to be a recognized political party. Said party may regain recognition only by following the procedure prescribed for formation of new political parties. The State Election Board shall proclaim the fact of a party's failure to receive a sufficient number of votes and shall order that said party cease to be recognized."

**8.** § 1–107. Recognized political parties. "Recognized political parties shall include parties whose candidates' names appeared on the General Election ballot in 1974 and those parties which shall be formed according to law."

§ 1–108. Formation of new political parties. "A group of persons may form a recognized political party at any time except during the period between July 1 and November 15 of any even-numbered year if the following procedure is observed:

1. Notice of intent to form a recognized political party must be filed in writing with the Secretary of the State Election Board at any time except during the period between March 1 and November 15 of any even-numbered year.

2. Within ninety (90) days after said notice is filed, petitions seeking recognition of a political party, in a form to be prescribed by the Secretary of the State Election Board, shall be filed with said Secretary, bearing the signatures of registered voters equal to at least five percent (5%) of the total votes cast in the last General Election either for Governor or for electors for President and Vice-President. Each page of said petitions must contain the names of registered voters from a single county.

3. Within thirty (30) days after receipt of said petitions, the State Election Board shall determine the sufficiency of said petitions. If said Board determines there are a sufficient number of valid signatures of registered voters, the party becomes recognized under the laws of the State of Oklahoma with all rights and obligations accruing thereto."

as a voter is automatically, without his consent or permission, determined to be that of an "independent."

Our recent opinion in *McCarthy v. Slater*, 553 P.2d 489, 47 OBJ 1674 (Okl.1976), recognized there was a void in the nomination of presidential electors for an "independent," and held they must be allowed access to the ballot for the November, 1976 General Election.

If Oklahoma by statute does not recognize the American Party and casts them into the role of an independent voter, then they should be accorded the same rights of ballot access to the office of presidential elector as was given to the independent presidential electors for Eugene McCarthy.

I respectfully dissent.