Dr. Grant COOPER, G. Robert ROSS et al *v.*
Frank B. HENSLEE et al

74-102                     522 S.W. 2d 391

Opinion delivered April 7, 1975

964

*Morton Gitelman* and *Walker, Kaplan & Mays, P.A.,* by: *Philip E. Kaplan* and *John M. Bilheimer,* for Cooper; *Ray Trammell,* for Ross et al.

*Givens & Buzbee,* for Henslee et al; Deputy Prosecuting Atty. *Tom Tanner,* for Lee Munson, Prosecuting Attorney.

THOMAS HARPER, Special Justice. This case is here on appeal from a decree of the Pulaski County Chancery Court. Appellees Frank B. Henslee and twenty-two other members of the Arkansas General Assembly filed their complaint in that Court against appellant Dr. Grant Cooper, Chancellor C. Robert Ross of the University of Arkansas at Little Rock (UALR) and the University's Board of Trustees (collectively referred to as Ross), and Mrs. Nancy Hall, State Treasurer, seeking to enjoin Mrs. Hall and Ross from disbursing any state funds for the payment of any salary to appellant Cooper, an assistant professor of history at UALR, and seek-

ing a mandatory injunction ordering Ross to terminate appellant Cooper's employment in any capacity at UALR.

Appellees alleged that appellant Cooper had (1) violated the provisions of Section 1 of the Acts of Arkansas of 1941 (Ark. Stats. 41-4111) and (2) that because Cooper was an avowed member of the Progressive Labor Party (PLP), an affiliate of the Communist Party, he was ineligible for State employment because of the provisions of Section 3(c) of said Act [Ark. Stats. 41-4113(c)].

After preliminary pleadings and procedure not particularly relevant here, during which appellees abandoned their prayer for the mandatory injunction to terminate Cooper's employment, the issues were narrowed to (1) whether the trial court had jurisdiction to grant the relief sought and (2) whether these statutes are constitutionally valid.

Appellants Ross aligned themselves with appellant Cooper on the constitutional issues. The prosecuting attorney of Pulaski County, by an intervention, aligned himself with the appellees and further sought a declaratory judgment, asking the lower Court to declare that the involved statutes are constitutional.

After the issues were drawn the cause was heard by the trial court on oral evidence, following which a decree was entered finding both statutes to be constitutional, that appellant Cooper had violated Section 1 of Act 292 of 1941 (Ark. Stats. 41-4111) and was a member of PLP, " a communistic organization", which, as well as Cooper, believes in the necessity of the violent overthrow of the governments of Arkansas and the United States, that Cooper teaches from a communistic viewpoint, and that Cooper's membership in PLP renders him ineligible for employment by the State of Arkansas. On these findings the lower Court dismissed the State Treasurer as a party to the action and enjoined the Chancellor of UALR and its trustees from paying appellant Cooper any salary from public funds in his capacity as an assistant professor at UALR. The decree, except to the extent of the findings noted above, did not enter the declaratory

judgment sought by the intervening prosecuting attorney.

From that decree, appellants Cooper, Ross and the Trustees have appealed to this Court.

Appellant Cooper mainly contends (1) the Chancery Court lacked jurisdiction to grant the injunction and (2) that the statutes involved are unconstitutional because Ark. Stats. 41-4113(c) is a bill of attainder and violates the First and Fourteenth Amendments of the Constitution of the United States, and (3) that both statutes are unconstitutional on their face and unconstitutional as applied to appellant Cooper. The appellants Ross generally adopt these contentions except as to jurisdiction.

Ark. Stats. 41-4111 reads:

"Subversive activities defined and prohibited. — (a) It shall be unlawful for any person; (1) to knowingly or willfully advocate, abet, advise, or teach the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence, or by the assassination of any officer of any such government; (2) with the intent to cause the overthrow or destruction of any government in the United States, to print, publish, edit, issue, circulate, sell, distribute, or publicly display any written or printed matter advocating, advising, or teaching the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence; (3) to organize or help to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any government in the United States by force or violence; or to be or become a member of, or affiliate with, any such society, group, or assembly of persons, knowing the purposes thereof. (b) For the purposes of this section, the term "government in the United States" means the government of the United States, or the government of this state. [Acts 1941, No. 292. §1, p. 754.]"

Ark. Stats. 41-4113 in its entirety reads:

"41-4113. Penalty for subversive activities — Ineligibility for employment. — (a) Any person who violates any of the provisions of this act shall be deemed guilty of a felony and, upon conviction thereof, be fined not more than ten thousand dollars [$10,000] or imprisoned for not more than ten [10] years, or both such fine and imprisonment. (b) No person convicted of violating any of the provisions of this act [§§41-4111 — 41-4113] shall, during the five years next following his conviction, be eligible for employment by the State of Arkansas, or by any department or agency thereof. (c) No person who is a member of a Nazi, Fascist or Communist society, or any organization affiliated with such societies, shall be eligible for employment by the State of Arkansas, or by any department, agency, institution, or municipality thereof."

Subsection (c), supra, is that portion of this section under attack here.

The facts are not in **dispute.** At the time this action was commenced and tried below, appellant was employed by the State of Arkansas as a member of the faculty of UALR. He admitted he was a member of the PLP, that he espoused its aims and principles, which included advocacy of revolutionary change of the government of the United States, by violence if necessary, which change is regarded as inevitable, although not within any specific time, except in the "future". He admitted that he advocated these principles to his students, and that he taught from a communistic point of view.

We find it necessary to discuss only two of the issues raised by appellants.

Appellees' complaint, as amended to eliminate the prayer for mandatory injunction, states a cause of action under the "illegal exaction" section of the Arkansas Constitution (Article 16, Section 13). It has long been held a court of equity has jurisdiction to enjoin payment of public funds in violation of law. *Revis* v. *Harris,* 217 Ark. 25, 228 S.W. 2d 624 (1950); *Rose* v. *Brickhouse,* 182 Ark. 1105, 34 S.W. 2d 472

(1931); *Sitton* v. *Burnett*, 216 Ark. 574, 226 S.W. 2d 544 (1950); *Starnes* v. *Sadler*, 237 Ark. 325, 372 S.W. 2d 585 (1963); *Nelson* v. *Berry Petroleum Co.*, 242 Ark. 273, 413 S.W. 2d 46 (1967).

It should be kept in mind that while the trial court found Section 41-4111 was constitutional and that appellant Cooper had violated its provisions, nevertheless there was no finding he had been convicted for such violation, and the record shows no conviction. The only relief granted appellees in the decree was to enjoin appellants Ross and the Trustees from paying any State funds to Cooper because of his party membership. Accordingly, we do not find it necessary to consider the question of the trial court's jurisdiction to construe Section 41-4111, but only whether it had jurisdiction to grant this injunctive relief.

By applying the provisions of 41-4113(c) to the uncontroverted proof in this case, payment of salary to the appellant Cooper would be an illegal exaction if 41-4113(c) can withstand constitutional scrutiny.

After a careful consideration of the decisions of the United States Supreme Court construing state statutes of similar, if not identical, purposes we conclude that Ark. Stats. Ann. 41-4113 Section (c) must be declared unconstitutional on its face as violative of the First Amendment to the United States Constitution.

In *United States* v. *Robel*, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), the U.S. Supreme Court held unconstitutional that portion of the Subversive Activities Control Act of 1950 which attempted to bar from any employment in any defense facility a person who was a member of a communist-action organization. The statute in that case was not dissimilar to 41-4113(c) in that it prevented membership and employment without regard to the relationship between the two. Chief Justice Warren, speaking for the Court, stated the problems caused by overbreadth at page 265-266 of Vol. 389 U. S.:

"[12-16] It has become axiomatic that '[p]recision

of regulation must be the touchstone in an area so closely touching our most precious freedoms.' *NAACP* v. *Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963); see *Aptheker* v. *Secretary of State*, 378 U.S. 500, 512-513, 84 S.Ct. 1659, 1667, 12 L.Ed.2d 992; *Shelton* v. *Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Such precision is notably lacking in §5(a)(1) (D). That statute casts its net across a broad range of associational activities, indiscriminately trapping membership which can be constitutionally punished and membership which cannot be so proscribed. It is made irrelevant to the statute's operation that an individual may be a passive or inactive member of a designated organization, that he may be unaware of the organization's unlawful aims, or that he may disagree with those unlawful aims. It is also made irrelevant that an individual who is subject to the penalties of §5(a)(1)(D) may occupy a nonsensitive position in a defense facility. Thus §5(a)(1)(D) contains the fatal defect of overbreadth because it seeks to bar employment both for association which may be proscribed and for association which may not be proscribed consistently with First Amendment rights. See *Elfbrandt* v. *Russell*, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321; *Aptheker* v. *Secretary of State, supra; NAACP* v. *Alabama ex rel, Flowers*, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed. 2d 325 (1964); *NAACP* v. *Button, supra.* This the Constitution will not tolerate.''

41-4113(c), on the basis of Communist or similar party membership alone, bars an individual from employment by the State or any of its agencies, departments and institutions or by a municipality. The State no doubt has an interest in protecting certain areas of State government and sensitive positions of employment from those who might threaten the exercise of governmental functions, but 41-4113(c), as written, indiscriminately and without any precision whatsoever prevents, solely on the basis of association, any such party member from any employment by the State, its agencies, departments and institutions or by a municipality in the State.

*Keyishian* v. *Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17

L.Ed.2d 629 (1967), reviewed provisions of administrative regulations and statutes pertaining specifically to teachers at State institutions in New York State which required as a condition of employment that these teachers certify in writing among other things that they had never been a member of the Communist party. Justice Brennan speaking for the majority stated at Page 606 of Vol. 385 U.S.:

"[1] We proceed then to the question of the validity of the provisions of subdivision 1 of §105 and subdivision 2 of §3022, barring employment to members of listed organizations. Here again constitutional doctrine has developed since *Adler*. Mere knowing membership without a specific intent to further the unlawful aims of an organization is not a constitutionally adequate basis for exclusion from such positions as those held by appellants.

"[12] In *Elfbrandt* v. *Russell*, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321, we said, 'Those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees.' Id., at 17, 86 S.Ct., at 1241. We there struck down a statutorily required oath binding the state employee not to become a member of the Communist Party with knowledge of its unlawful purpose, on threat of discharge and perjury prosecution if the oath were violated. We found that '[a]ny lingering doubt that proscription of mere knowing membership, without any showing of "specific intent," would run afoul of the Constitution was set at rest by our decision in *Aptheker* v. *Secretary of State*, 378 U.S. 500, 84 S. Ct. 1659, 12 L.Ed.2d 992.' *Elfbrandt* v. *Russell, supra*, at 16, 86 S.Ct. at 1240. In *Aptheker* we held that Party membership, without knowledge of the Party's unlawful purposes and specific intent to further its unlawful aims, could not constitutionally warrant deprivation of the right to travel abroad. As we said in *Schneiderman* v. *United States*, 320 U.S. 118, 136, 63 S.Ct. 1333, 1342, 87 L.Ed. 1796, '[U]nder our traditions beliefs are personal and not a matter of mere association, and *** men in adhering to a political party or

other organization *** do not subscribe unqualifiedly to all of its platforms or asserted principles.' 'A law which applies to membership without the "specific intent" to further the illegal aims of the organization infringes unnecessarily on protected freedoms. It rests on the doctrine of "guilt by association" which has no place here.' *Elfbrandt, supra,* at 19, 86 S.Ct., at 1242. Thus mere Party membership, even with knowledge of the Party's unlawful goals, cannot suffice to justify criminal punishment, see *Scales* v. *United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782; *Noto* v. *United States,* 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836; *Yates* v. *United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356; nor may it warrant a finding of moral unfitness justifying disbarment. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 77 S. Ct. 752, 1 L.Ed.2d 796."

In *Cole* v. *Richardson,* 405 U. S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 (1972), Chief Justice Burger, speaking for the Court at page 680 of 405 U.S. stated the following principle with reference to loyalty oaths:

"We have made it clear that neither federal nor state government may condition employment on taking oaths that impinge on rights guaranteed by the First and Fourteenth Amendments respectively, as for example those relating to political beliefs. ***

"Employment may not be conditioned on an oath denying past, or abjuring future, associational activities within constitutional protection; such protected activities include membership in organizations having illegal purposes unless one knows of the purpose and shares a specific intent to promote the illegal purpose."

It might be argued that appellant Cooper's admitted knowledge of the aims and purposes of PLP and his belief in and advocacy of these aims and purposes would justify upholding Section 41-4113(c) in its prohibition of State employment of a member of PLP who knew, believed in and advocated its aims and principles. But, the statute does not go that far. It proscribes such employment because of mere par-

ty membership, and nothing more. This lack of precision and the narrow restriction to party membership only would bar from State employment not only any such party members who knew and advocated the aims and principles of the party, but also any such member of the party who was a member, and nothing more. The validity of the statute in the light of First Amendment rights must be viewed in the light of the effect of the statute on all persons, and not just the appellant Cooper.

Obviously, the philosophy of the Court has not changed during the last few years. See *Sugarman* v. *Dougall*, 413 U. S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973), a case involving aliens in civil service positions. It is totally inconsistent to invalidate a loyalty oath provision and allow to stand a statute which punishes a certain class, state employees, for mere membership in a political organization. The philosophy of the loyalty oath cases reinforces the strength of the First Amendment to the U. S. Constitution. See also *Brandenburg* v. *Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Yates* v. *U.S.*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Noto* v. *U.S.*, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961).

This Court has no choice but to follow these decisions of the Court which is the final arbiter when constitutional interpretation is in dispute. To uphold the provisions of Ark. Stats. Ann. 41-4113(c) as protecting a valid state interest, i.e. teaching in a state institution the communist theory of government, would be to ignore the controlling authority on this issue. This Court cannot accept those arguments made by Henslee with reference to Cooper's particular position and the interest of the state therein as applicable to justify affirming the constitutionality of a statute that has such a chilling effect on the exercise of valid First Amendment rights such as freedom of speech and freedom of association.

We are not unmindful of *Adler* v. *Board of Education*, 342 U.S. 485, 72 S. Ct. 380, 96 L.Ed. 517 (1952), and *Beilan* v. *Board of Education of Philadelphia*, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958), relied on by appellees.

However much one might wish to accept *Adler* as authority for upholding Sec. 41-4113(c), one must also face the reality that *Adler* has been so thoroughly eroded, if not overruled by the later cases of *Keyishian*, *Robel* and others, that we cannot view it as an acceptable precedent to uphold this particular statute.

The issue before us is not whether appellant Cooper's beliefs, his advocacy and teaching of PLP's aims and principles or his PLP membership merit our approval. The sole relevant issue is whether his membership in PLP constitutionally disqualifies him from employment by the State. We must hold that it did not.

As an example of the overbreadth of the provisions of 41-4113(c) which require the discharge of a state employee regardless of the relationship of his employment to a valid state interest, a person operating a mowing machine for the State Highway Department, or an elevator operator in a State building, would be deprived of his First Amendment rights without any compelling state interest in his political philosophy.

The Constitution of the United States does not permit us to take a contrary view. Article 6, Clause 2, the Supremacy Clause, provides in part:

> "This Constitution, and the Laws of the United States . . . . shall be the supreme law of the land; and the Judges in every State shall be bound thereby . . . . the Constitution or Laws of any State to the contrary notwithstanding."

The federal supremacy granted by this clause applies not only to the Constitution and laws of the United States, but to the interpretation of that Constitution and those laws by the United States Supreme Court. *Cooper* v. *Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, citing Chief Justice Marshall's forceful exposition of this point in *Marbury* v. *Madison*, 1 Cranch 137, 177, 2 L.Ed. 60.

In view of our holding we find it unnecessary to reach

any conclusion as to the validity of Ark. Stats. 41-4111 or any of the provisions of Ark. Stats. 41-4113 other than subsection (c). Subsection (a) provides for the punishment, upon conviction, for violation of the prohibitions of the statute and subsection (b) bars any person so convicted from State employment for a period of five years, but the record here shows no such conviction, thus eliminating any necessity to consider the validity of these subsections. Nor do we find it material whether this subsection is a bill of attainder, for in any event subsection (c) cannot be upheld.

The injunction of the lower court was issued on the basis of subsection (c), and since it must fall, we reverse the decree of the Chancery Court and remand with directions to dissolve the injunction against appellants Ross and the Trustees, to dismiss the complaint and intervention, and for other proceedings consistent with this opinion.

The writer is authorized to state that Justices George Rose Smith, Brown and Jones join in this opinion and in the concurring opinion of Justice Fogleman.

The Chief Justice concurs in part and dissents in part.

FOGLEMAN, GEORGE ROSE SMITH, BROWN and JONES, JJ concur.

HOLT, J. disqualified.

CARLETON HARRIS, Chief Justice. concurring in part; dissenting in part. I concur in part and dissent in part to the majority opinion. My concurrence is based on the fact that I agree that the decree must be reversed, but my dissent is premised on the fact that I disagree with the reason for reversal.

I would reverse because I do not feel that the chancery court had jurisdiction. The statues passed upon by the chancellor are a part of the criminal law of our state, listed under the heading, "Treason, Disloyal Conduct, Sabotage." While I agree with the majority that, under a number of United States Supreme Court decisions, membership alone in

a communist organization, is insufficient to bar one from State employment, it is my view that the trial court, in rendering its decree, also took into consideration the provisions of Ark. Stat. Ann. § 41-4111 (Repl. 1964), which state:

> "(a) It shall be unlawful for any person; (1) to knowingly or willfully advocate, abet, advise, or teach the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence, or by the assassination of any officer of any such government; (2) with the intent to cause the overthrow or destruction of any government in the United States, to print, publish, edit, issue, circulate, sell, distribute, or publicly display any written or printed matter advocating, advising, or teaching the duty, necessity, desirability, or propriety of overthrowing or destroying any government in the United States by force or violence; (3) to organize or help to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any government in the United States by force or violence; or to be or become a member of, or affiliate with, any such society, group, or assembly of persons, knowing the purposes thereof. (b) For the purposes of this section, the term 'government in the United States' means the government of the United States, or the government of this state."

A violation is a felony, and subjects the offender to a fine of up to $10,000 or imprisonment for not more than 10 years, or both, and the statute further provides that any person convicted shall not be eligible for employment by the state or any agency or department for the next five years following his conviction.

The first finding made by the chancellor was that the activities of Cooper are in violation of the quoted section; it is *then* found that subsection (c) of § 41-4113 is valid and that Cooper is ineligible for employment by the State of Arkansas. In fact, the only reason for taking testimony was for the purpose of showing the activities of Cooper; there was certainly

no reason to take testimony simply to show that he belonged to a communistic group, for he very readily admitted that.

The constitutionality of § 41-4111 in its application to appellant, in my opinion, depends upon the extent of the activities of Cooper in furtherance of the prohibited objectives therein mentoned (with particular reference to subsection [a] [1], *Yates* v. *United States*, 354 U.S. 298, *Noto* v. *United States*, 367 U.S. 290, and I agree with appellant that the chancery court was without authority to make this determination for it had no jurisdiction. In this state, criminal felony violations are heard in the circuit court and we held in *Ferguson* v. *Martineau, Chancellor*, 115 Ark. 317, 171 S.W. 472, "It is no part of the mission of equity to administer the criminal law of the State. A court of equity has no jurisdiction over matters merely criminal or merely immoral."

The case of *Gordon* v. *Smith, Chancellor*, 196 Ark. 926, 120 S.W. 2d 325, involved efforts of certain citizens to enjoin police officers within this state from arresting, threatening to arrest, or otherwise interfering with the citizens in operating their automobiles upon the streets and highways because they had not complied with a statute providing for the testing of motor vehicles, it being the contention of the citizens that this statute was unconstitutional. This court, citing a number of cases, held that the chancery court was without jurisdiction and that the matter should be determined in a court of law.

I do not reach the question of whether the evidence before the chancellor sustains a violation of § 41-4111 or any subsection therein, which would stand under United States Supreme Court decisions, for I am firmly convinced that the chancery court was without jurisdiction.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result, but I never reach the considerations which bring the majority to it. There was a finding by the chancery court that the activities of Dr. Cooper were in violation of Ark. Stat. Ann. § 41-4111 (Repl. 1964). Viewed in the light most favorable to the court's decree, Dr. Cooper's testimony may be summarized as follows:

> The Progressive Labor Party of which I am a member believes that there is a ruling class, consisting of a very small group of people, which controls the country's economy, and through that power, also controls the government and that this control creates oppression. The Party also believes that there must be a dictatorship of the working class, but since the ruling class will not surrender its power voluntarily, there will be violence. The Party is prepared for that eventuality. I joined the Party knowing of these guidelines. I adhere to them and believe that violence and a revolution are necessary. I explain to my students that I believe revolution is necessary. The Party believes that the government, as the agent of the small group constituting the ruling class, practices violence on most people, who can only

escape this violence by violence and I agree.

I do not believe the Progressive Labor Party can obtain power through constitutional means. I explain to my students that, looking at the record of American history, the only possible solution is revolution. The Progressive Labor Party thinks we have to overthrow the government of the United States. I personally adhere to this philosophy. I view the necessity for the revolution as a moral imperative but I am not talking about anything imminent or in the near future. I do not think the overthrow of the government will occur in the next few years. I discuss politics with teachers and students and talk about the situation and what I think should be done about it.

Dr. Cooper and his party believe that violence and a revolution are necessary. I take this to mean essential, indispensable, requisite, denoting that which fills an urgent need. The American Heritage Dictionary; Webster's New International Dictionary, 2d Ed. (see "needful") See also, Webster's Third New International Dictionary; Rodale, The Synonym Finder. He explains this to his students. This necessity, to him is a moral imperative. This means that it is obligatory, mandatory, directive, compulsory; more than urgent need or demand that cannot be deferred or evaded; something to be acted on; an unavoidable fact compelling or insistently calling for action. The American Heritage Dictionary; Webster's New International Dictionary, 2d Ed. They believe the only possible solution is revolution — that they *have* to overthrow the government. This seems to be rather compelling and seems to be more than the expression of an idea.

Just the belief that his dreams are not going to come true within the next few years does not conceal the fact that he believes in and advocates that which he thinks should be done now. To me, advocacy and encouragement of action are implicit in his expression and explanation of these beliefs. Clearly, Dr. Cooper has the specific intent to further the unlawful aims of his organization, shares its unlawful purposes and is an active member. The Party's aim, of which he seems to be

fully aware, is established by his own testimony. Assuming that they may not be unlawful, his own characterization is that they are not "constitutional means". It may be that one must command or invite an instantaneous assault upon the officers or seat of government before he is removed from the area of First Amendment protection, under some of the authorities cited in the majority opinion. Permitting a veil so transparent, woven largely from finespun semantical thread, to become a constitutional shield against such "teaching" is so distasteful to me that I prefer to take another approach to the matter.

Unlike the majority, I consider the very first point for reversal relied upon by appellant, i.e., that Ark. Stat. Ann. § 41-4113(c) (Repl. 1964) is an unconstitutional bill of attainder. With this argument, I must agree, although there seems to be some lack of consistency in decisions where the Communist Party is involved. Article I, § 10 of the United States Constitution provides that no state shall pass a bill of attainder, i.e., a legislative act which inflicts punishment without a judicial trial. The constitutional provision was adopted as a direct reaction to English bills of attainder, some of which were enacted for retribution and some for preventive purposes. The latter were legislative judgments, based largely on past acts and associations, that a given person or group was likely to cause trouble, perhaps overthrow the government, and therefore deprivations were inflicted upon the person or group in order to prevent the feared event. *United States* v. *Brown*, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484. There can be no disavowal of such a purpose in § 41-4133(c). For that reason it seems to me to be an unconstitutional bill of attainder which cannot be viewed in any other light, under the most recent decisions of the United States Supreme Court by which we are bound in matters involving the federal constitution. The decisions from which I reach this result span a century and are completely consistent.

The bill of attainder had been a device to which resort was frequently had in England in the sixteenth, seventeenth and eighteenth centuries for dealing with persons who had attempted, or threatened to attempt to overthrow the govern-

ment. Our constitutional prohibition was adopted by the Constitutional Convention unanimously and without debate.[1] *United States* v. *Brown,* supra.

"Bill of attainder" under the federal constitutional provision is an all-inclusive term, encompassing what formerly had been known as bills of pain and penalties, which were, along with the classic bill of attainder imposing the death penalty, legislative acts inflicting punishment without a judicial trial. *Cummings* v. *The State of Missouri,* 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866); *Ex parte Garland,* 71 U.S. (4 Wall.) 277, 18 L.Ed. 366 (1866)[2]; *United States* v. *Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *United States* v. *Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). The word punishment, in the sense of the constitutional provision, is more comprehensive than when used to describe imprisonment, fines, or deprivation of life. In the constitutional sense, it also includes penalties of a civil nature, by deprivation or suspension of civil or political rights, depending upon attendant circumstances and the causes of the deprivation. Disqualification from the pursuit of a lawful profession or vocation, as well as a bar from government service, may constitute this type of punishment. *Cummings* v. *The State of Missouri,* supra; *Ex parte Garland,* supra; *United States* v. *Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *United States* v. *Brown,* supra. Bill of attainder may be directed against individuals or against a whole class or easily ascertainable group. *Cummings* v. *The State of Missouri,* supra. *United States* v. *Lovett,* supra; *United States* v. *Brown,* supra.

It seems to me that under *United States* v. *Brown,* supra, the latest and most authoritative case on the subject § 41-4113(c) must fall as a bill of attainder because it makes eligibility for employment dependent upon non-membership in a Nazi, Fascist or Communist society, and not upon the ac-

[1]For an enlightening discussion of the history of the bill of attainder, both in England and the United States, and the application of our constitutional prohibition, see Notes and Comments, the Bounds of Legislative Speculation: A Suggested Approach to the Bill of Attainder Clause, 72 Yale Law Journal 330 (1962-1963).

[2]It is worthy of note that this case involved the right of Augustus H. Garland to continue to practice law before the Supreme Court of the United States after he had served first as a representative and later as a senator in the Congress of the Confederate States. Except for this decision Attorney General Garland could not have been the first Arkansawyer to serve in the president's cabinet.

tivities in which either the person or society may be engaged. See, *Communist Party of the United States* v. *Subversive Activities Control Board*, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). I am not unaware of *American Communications Assn.* v. *Douds*, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1949) which upheld a provision of the National Labor Relations Act, as then written. I do feel that, in *Brown*, the U.S. Supreme Court, in distinguishing *Douds*, strictly limited it, to say the least, and, in effect, removed a part of its foundation, saying that this part resulted from a misreading of *United States* v. *Lovett*, supra.[3] Be that as it may, the court pointed out in *Douds* that the bar of access of a union having an officer who was a member of the Communist party to the National Labor Relations Board did not necessarily bar any Communist party member from office in his union, even though loss of his position was a possible indirect result. Here, and in *Brown*, the bar was absolute. Concluding language in the *Brown* opinion seems pertinent and applicable. Since I think it requires that § 41-4113(c) as written be declared void as a bill of attainder, I quote it, as follows:

> We do not hold today that Congress cannot weed dangerous persons out of the labor movement, any more than the Court held in *Lovett* that subversives must be permitted to hold sensitive government positions. Rather, we make again the point made in *Lovett:* that Congress must accomplish such results by rules of general applicability. It cannot specify the people upon whom the sanction it prescribes is to be levied. Under our Constitution, Congress possesses full legislative authority, but the task of adjudication must be left to other tribunals.

> This Court is always reluctant to declare that an Act of Congress violates the Constitution, but in this

---

[3]The efficacy of *Douds* on this point seems to have been doubtful in the minds of several members of the court many years ago. See dissenting opinions in *Killian* v. *United States*, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 and in *Bryson* v. *United States*, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), where the majority declined to decide whether the section of the act questioned in *Douds* and later repealed, would then have passed constitutional muster and whether *Douds* would be reaffirmed. Justices Black and Douglas, dissenting, pointed out that only 6 members of the court participated in *Douds*, and their analysis indicates that only one half of them joined in this part of the "opinion of the Court."

case we have no alternative. As Alexander Hamilton observed:

"By a limited constitution, I understand one which contains certain specified exceptions to the legislative authority; such, for instance, as that it shall pass no bills of attainder, no ex post facto laws, and the like. Limitations of this kind can be preserved in practice no other way than through the medium of the courts of justice; whose duty it must be to declare all acts contrary to the manifest tenor of the constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing."

Since it appears clear to me that this is a bill of attainder I would avoid penetrating the more tangled jungle in which cases involving bars to employment, those involving mere qualifications for employment and those requiring test oaths seem to be so intermingled and intertwined that drawing clear distinctions is difficult, if not impossible.

I must add that I agree with the majority on the jurisdictional question. If § 41-4113(c) rendered Dr. Cooper's employment an illegal contract, it was unenforceable. *K. & S. Sales Co.* v. *Lee*, 164 Ark. 449, 261 S.W. 903; *Tallman* v. *Lewis*, 124 Ark. 6, 186 S.W. 296. The payment of his salary would be an illegal exaction under those circumstances. See, *Tallman* v. *Lewis*, supra. Enjoining that payment from tax funds is not the enforcement of the criminal law any more than refusing to enforce a gambling contract would be. To enforce a contract prohibited by law would permit the law to aid in its own undoing. *Tallman* v. *Lewis*, supra.

For the reasons I have stated I would reverse the decree.