## Ex parte THOMAS.

No. 331. Opinion Filed August 29, 1908.

(97 Pac. 260.)

WEAPONS—Regulation—Statutes—Bill of Rights. The provisions of the statutes of Oklahoma (sections 2502, 2503. Wilson's Rev. & Ann. St. Okla. 1903) prohibiting the carrying of the weapons therein set out are not repugnant to each other, or violative of section 26 of article 2 of the Bill of Rights of the Constitution of Oklahoma, but are valid provisions of such statutes extended to and put in force in the state by the provisions of section 21 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277) and section 2 of the Schedule of the Constitution.

(Syllabus by the Court.)

*Habeas corpus* on petition of Richard Thomas. Writ denied.
*J. M. Springer,* for petitioner.

*Chas. West, Attorney General,* and *W. C. Reeves, Assistant Atty. Gen.,* for respondent.

DUNN, J. Richard Thomas was charged by information filed in the county court of Payne county, Okla., with the offense of willfully and unlawfully carrying on or about his person a pistol, concealed, contrary to the statute, etc. He was sentenced to pay a fine of $25 and to be incarcerated in the county jail for 30 days, and, on being taken in charge by the sheriff under this sentence, brought this original action of *habeas corpus* in the Supreme Court, praying a discharge. The agreed statement of facts and the briefs of the counsel submit to this court for its consideration and decision the question as to the status of the law in reference to carrying weapons in this state. Counsel for petitioner makes a very ingenious argument on the subject, but in our judg-

ment it is more ingenious than sound. He contends that there is no law in the state of Oklahoma to prevent or regulate the carrying of arms or weapons, and his line of reasoning is as follows: Section 583, c. 25 (section 2502), Wilson's Rev. & Ann. St. 1903, is as follows:

"It shall be unlawful for any person in the territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided."

This section, counsel contends, is repealed by the one which follows it, which reads as follows:

"It shall be unlawful for any person in the territory of Oklahoma, to carry upon or about his person, any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided."

The contention on these two sections is that, if a person is prohibited from carrying weapons at all, he is certainly prohibited from carrying them concealed, and, as the first paragraph and the evil intended is fully included in the second paragraph, the first is rendered inoperative, void, and of no force and effect. He admits that his client carried the pistol mentioned, and he seeks to avoid the force of the second paragraph which prohibits the carrying of any weapons whatever by the provision of the Constitution of the state (section 26, are. 2; section 35, Bunn's Constitution), which reads as follows:

"The right of a citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power, when thereunto legally summoned, shall never be prohibited; but nothing herein contained shall prevent the Legislature from regulating the carrying of weapons."

Under this section he conceives the idea that his client had the absolute right to carry the pistol for which he is now being punished; that section 2503 is in conflict with this section of the Constitution, and must fall; that section 2502, which prohibits

the carrying of weapons concealed, and hence a regulation thereof, and not a prohibition, is in conflict and repealed by section 2503, and hence was not carried into force and effect by section 2 of the Schedule of the Constitution, which provides that:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklamoma until they expire by their own limitation or are altered or repealed by law."

There are certain other provisions of the statute regulating the carrying of weapons and granting permission to the public officers to carry arms, and for other persons to carry shotguns and rifles for hunting or for having them repaired, or for the purpose of using the same in public muster or military drills, etc; also a provision against any one except a peace officer carrying into any church or religious assembly, or to an election or place where intoxicating liquors are sold, and certain other assemblies, any weapon designated in the first and second section above set out. These particular sections are not of moment here, and hence will not be set out at length.

We agree with counsel that the statutes in question cover practically the same subject, with the exception that the first one provides that the instruments mentioned therein shall not be carried concealed, while the second provides that the weapons mentioned therein shall not be carried at all, and the things which are mentioned cover practically the same articles. A loaded cane and a billy are mentioned in the second, and are not mentioned in the first; and a dagger, slung-shot, and sword are mentioned in the first, and not in the latter. With this execption and with the difference first noted, the statutes are practically identical, and why the Legislature incorporated them both in the act we are not able to say, but there is no room for holding that one of these repeals the other. They may both stand, and a party may be prosecuted under either. The second paragraph contains no repeal of the first. They are both contained in the same chapter,

and in the same article, were passed on the same day, and the rule in such cases is stated in Lewis' Sutherland on Statutory Construction, § 268, to be as follows:

"The presumption is stronger against implied repeals where provisions supposed to·conflict are in the same act or were passed at nearly the same time. In the first case it would manifestly be an inadvertence, for it is not supposable that the Legislature would deliberately pass an act with conflicting intentions. In the other case the presumption rests on the improbability of a change of intention or, if such change had occurred, that the Legislature would express it in a different act without an express repeal of the first. 'Statutes enacted at the same session of the Legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia.* Each is supposed to speak the mind of the same Legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session.' The presumption is that different acts passed at the same session of the Legislature are imbued by the same spirit and actuated by the same policy, and that one was not intended to repeal or destroy another, unless so expressed."

To the same effect is the holding in the case of *State v. Rackley* from the Supreme Court of the state of Indiana. 2 Blackf. 249:

"Statutes enacted at the same session of the Legislature are to be taken *in pari materia,* and should receive a construction which will give effect to each, if possible. But if each of them cannot have the entire effect when taken in connection with the others that it would have if taken singly, they must be so constructed as to give effect to what appears to have been the main intention of the Legislature.'

In the case at bar these statutes must have been passed as is said by Mr. Sutherland "through inadvertence"; but construing them so as to give effect to what appears to have been the main intention of the Legislature in our judgment will give effect to both, and a prosecutor may proceed under either as the facts require. They are for the greater part cumulative, but not conflicting.

Now the question arises: Were these sections of the territorial statutes extended to, and did they remain in force in the state of Oklahoma, or are they repugnant to that section of the Constitution above cited, relating to the right of citizens to bear arms. The question now presenting itself is whether or not the pistol, for the carrying of which defendant is restrained of his liberty, is among the arms which he could be prohibited from carrying or bearing. Practically all of the states under constitutional provisions similar to ours have held that acts of the Legislature against the carrying of weapons concealed did not conflict with such constitutional provision denying infringement of the right to bear arms, but were a valid exercise of the police power of the state. A few of the states which have so held are indicated as follows: *Nunn v. State,* 1 Ga. 243; *State v. Mitchell,* 3 Blackf. (Ind.) 229; *State v. Reid,* 1 Ala. 612, 35 Am. Dec. 41, *State v. Jumel,* 13 La. Ann. 399; *State v. Wilburn,* 7 Baxt. (Tenn.) 57, 32 Am. Rep. 551; *Cockrum v. State,* 24 Tex. 394; *State v. Buzzard,* 4 Ark. 18. The foregoing authorities could be multiplied, but they are deemed to be sufficient.

The question now arrises: Is a pistol the character of arms in contemplation of the constitutional convention and of the people of the state when they declared that the right of a citizen "to carry and bear arms," etc., "shall never be prohibited." We hold that it is not, and most of the states where it has been passed upon support us in this conclusion. Bishop on Statutory Crimes, § 793; *Andrews v. State,* 3 Heisk. (Tenn.) 165, 8 Am. Rep. 8; *Fife v. State,* 31 Ark. 455, 25 Am. Rep. 556; *English v. State,* 35 Tex. 473, 14 Am. Rep. 374; *Aymette v. State,* 2 Humph. (Tenn.) 154; *Hill v. State,* 53 Ga. 472; *City of Salina v. Blaksley,* 72 Kan. 230, 83 Pac. 619, 3 L. R. A. (N. S.) 168, 115 Am. St. Rep. 196; 7 Am. and Eng. Ann. Cases, 925. Many of the state Constitutions on this subject contain a reiteration of article 2 of the amendments to the Constitution of the United States that "a well regulated militia being necessary to the security of the free state, the right of the people to keep and bear arms shall

not be prohibited." Some of the courts have held that this section applied to the states, as well as the general government, but the ultimate conclusion to which practically all of the courts of the Union have finally arrived, including the United States Supreme Court, is that this amendment is a limitation on the federal government only. *Presser v. State of Illinois,* 116 U. S. 252, 6 Sup. Ct. 580, 29 L. Ed. 615; *United States v. Cruikshank,* 92 U. S. 542, 23 L. Ed. 588; *Fife v. State,* 31 Ark. 455, 25 Am. Rep. 556; *Andrews v. State,* 3 Heisk. (Tenn.) 166, 8 Am. Rep. 8. We have found no constitution containing a provision exactly the same as the one in ours, but the reasons which brought about its adoption and the second amendment to the federal Constitution, and the reasons underlying the motives which have caused it to be written into the different state constitutions, are identically the same. Some of the state courts in cases of this character have examined the history of this provision at length and while we do not deem it necessary to go into this, those who are interested in the subject will find an excellent review of the entire matter in the case of *Aymette v. State, supra,* wherein Justice Green, who delivered the opinion of the court has in a well written opinion, reviewed the same from its earliest appearance in England, and has marked its growth until it appears in the Constitution of the United States and finally in the Constitution of the state of Tennessee. While the language of the Constitution of the different states may vary in terms, yet they have sprung from the same source, and the purposes, aims, and objects to be accomplished by those provisions are identical, the same rule of construction will be applicable. The Constitution of the state of Tennessee in force at the time of the opinion last mentioned was "that the free white men of this state have a right to carry and bear arms for their common defense." The statute under which the defendant in that case was prosecuted read "that if any person shall wear any bowie knife, or Arkansas toothpick, or other knife or weapon, that shall in form, shape or size, resemble a bowie knife or Arkansas toothpick, under his clothes, or keep the same concealed about his person, such person shall be guilty

of a misdemeanor." The defendant contended that the statute was unconstitutional and that every man had a right to arm him-self in the manner which he chose. The defendant, it appears, had a bowie knife, of which the court in dealing with the question of whether or not such an instrument came within the meaning of the constitutional provision said:

"The words 'bear arms,' too, have reference to their military use, and were not employed to mean wearing them about the person as part of the dress. As the object for which the right to keep and bear arms is secured is of general and public nature, to be exercised by the people in a body, for their common defense, so the arms, the right to keep them which is secured, are such as are usually employed in civilized warfare, and that constitute the ordinary military equipment. If the citizens have these arms in their hands, they are prepared in the best possible manner to repel any encroachments upon their rights by those in authority. They need not, for such a purpose, the use of those weapons which are usually employed in private broils, and which are efficient only in the hands of the robber or assassin. These weapons would be useless in war. They could not be employed advantageously in the common defense of the citizens. The right to keep and bear them is not, therefore, secured by the Constitution."

In a later case (*Andrews v. State, supra,*) the Supreme Court of Tennessee, again dealing with the same subject and speaking through Justice Freeman, said:

"In order to arrive at what is meant by this clause of the state Constitution, we must look at the nature of the thing itself, the right to keep which is guaranteed. It is 'arms' (that is, such weapons as are properly designated as such, as the term is understood in the popular language of the country), and such as are adapted to the ends indicated above (that is, the efficiency of the citizen as a soldier, when called on to make good 'the defense of a free people'), and these arms he may use as a citizen, in all the usual modes to which they are adapted, and common to the country. What, then, is he protected in the right to keep and thus use? Not everything that may be useful for offense or defense; but what may, properly be included or understood under the title of 'arms,' taken in connection with the fact that the citizen is to keep them as a citizen. Such, then, as are found to make up the usual arms of the citizen of the country, and the use of which will

properly train and render him efficient in defense of his own liberties, as well as of the state. Under this head, with a knowledge of the habits of our people, and of the arms in the use of which a soldier should be trained, we would hold that the rifle of all descriptions, the shotgun, the musket, and repeater are such arms; and that under the Constitution the right to keep such arms cannot be infringed or forbidden by the Legislature, their use, however, to be subordinated to such regulations and limitations as are or may be authorized by the law of the land, passed to subserve the general good, so as not to infringe the right secured and the necessary incidents to the exercise of such right."

The court in this case considered three cases together, in one of which there was involved, as in the case at bar, the carrying of a pistol. The case of *Hill v. State, supra,* was one wherein the defendant was indicted for carrying a pistol. The provision of the Constitution of Georgia reads:

"A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed; but the General Assembly shall have power to prescribe the manner in which arms may me borne."

In considering the question as to whether or not the statute which provided that "no person in said state shall be permitted or allowed to carry about his or her person any dirk, bowie knife, pistol, or revolver, or any kind of deadly weapon, to any court of justice or any election ground or precinct," etc., was in violation of the terms of the Constitution, the Supreme Court said:

"The language of the Constitution of this state, as well as that of the United States, guarantees only the right to keep and bear the arms necessary for a militiaman. It is to secure the existence of a well-regulated militia. That, by the express words of the clause, was the object of it, and I have always been at a loss to follow the line of thought that extends the guarantee to the right to carry pistols, dirks, bowie knives, and those other weapons of like character, which, as all admit, are the greatest nuisance of our day. It is in my judgment a perversion of the meaning of the word 'arms,' as used in the phrase 'the right to keep and bear arms,' to treat it as including weapons of this character. The preamble to the clause is the key to the meaning of it. The word 'arms,' evidently means the arms of a militiaman, the weapons ordinarily used in battle, to wit, guns of every kind,

swords, bayonets, horseman's pistols, etc. The very words 'bear arms' had then, and now have, a technical meaning. The 'arms bearing' part of the people were its men fit for service on the field of battle. That country was 'armed' that had an army ready to fight. The call 'to arms' was a call to put on the habiliments of battle; and I greatly doubt, if in any good author of those days a use of the word 'arms' when applied to a people can be found which includes pocket pistols, dirks, sword-canes, tooth-picks, bowie knives, and a host of other relics of past barbarism, or inventions of modern savagery of like character. In what manner the right to keep and bear these pests of society can encourage or secure the existence of a militia, and especially of a well-regulated militia I am not able to divine."

The same weapon was involved in the case of *English v. State, supra.* The arms-bearing section of the Constitution of the state of Texas reads: "Every person shall have the right to keep and bear arms in the lawful defense of himself or the state, under such regulations as the Legislature may prescribe." On this the Supreme court of that state, speaking through Justice Walker, said: "We understand the word 'arms,' when used in this connection, as having the same import and meaning which it has when used in the amendment of the federal Constitution." It will thus be seen that the court held contrary to the general rule that the second article to the amendment of the Constitution of the United States is of a nature to bind both the state and national Legislatures, but its construction of the 'word "arms" is none the less valuable.

"To refer to the deadly devices and instruments called in the statute 'deadly weapons' to the proper or necessary arms of a well-regulated militia is simply ridiculous. No kind of travesty, however subtle or ingenious, could so misconstrue this provision of the Constitution of the United States as to make it cover and protect that pernicious vice, from which so many murders, assassinations, and deadly assaults have sprung, which it was doubtless the intention of the Legislature to punish and prohibit. The word 'arms' in the connection we find it in the Constitution of the United States refers to the arms of a militiaman or soldier, and the word is used in its military sense. The arms of the infantry soldier are the musket and bayonet; of cavalry and dragoons,

the sabre, holster pistols, and carbine; of the artillery, the field piece, siege gun, and mortar, with side arms. The terms 'dirks,' 'daggers,' 'slung-shots,' 'sword canes,' 'brass knuckles,' and 'bowie knives' belong to no military vocabulary. Were a soldier on duty found with any of these things about his person, he would be punished for an offense against discipline."

The Constitution of the state of Arkansas on this subject is: "The citizens of this state shall have the right to keep and bear arms for their common defense." The Legislature passed a prohibitory act providing "that any person who shall wear or carry any pistol of any kind whatever, or any dirk, butcher knife or bowie knife, or sword or spear in a cane, brass or metal knuckles, or razor, as a weapon, shall be adjudged guilty of a misdemeanor," etc. The construction of this provision of the laws of that state arose in the case of *Fife v. State, supra,* and the Supreme Court · held:

"The provisions of article 2 § 35, of the Constitution of this state, securing to the citizens the right to keep and bear arms for their common defense, relate to such arms as are used for purposes of war; and does not prevent the Legislature from prohibiting the wearing of such weapons as are not used in civilized warfare, and would not contribute to the common defense. The act of February 16, 1875, which prohibits the carrying of any pistol whatever as a weapon, refers to such pistols as are usually carried in the pocket, and of a size to be concealed about the person, and used in private quarrels; and not to such as are within the provisions of the Constitution."

That was a case, as is the one at bar, wherein the carrying of a pistol was involved; the defendant taking the position that the act of the Legislature which prohibited absolutely the carrying of the articles mentioned therein was in violation of the Constitution, and void. The remarks of the court are peculiarly applicable to our own statute:

"From the company in which the pistol is placed, and the known public mischief which the Legislature intended by the act to prevent, it is manifest that the pistol intended to be prescribed is such as is usually carried in the pocket or of a size to be concealed about the person and used in private quarrels and brawls, and not such as is in ordinary use and effective as a weapon of war, and

useful and necessary for 'the common defense.' The indications in the evidence are that the plaintiff in error was carrying a pistol of that class or character intended to be prohibited by the Legislature, and which we think may be prohibited in the exercise of the police power of the state without any infringement of the constitutional right of the citizens of the state to keep and bear arms for their common defense."

The case of *City of Salina v. Blaksley, supra,* was another one wherein the question of the right of the defendant to carry a pistol was before the Supreme Court of the state of Kansas for determination. Section 4 of the Bill of Rights of that state is as follows: "The people have the right to bear arms for their defense and security; but standing armies, in time of peace are dangerous to liberty and shall not be tolerated, and the military shall be in strict subordination to the civil power." The statute of the state of Kansas provided that a city council may prohibit and punish the carrying of fire arms or other deadly weapons, concealed or otherwise. The defendant was arrested for carrying a pistol, and his contention was that this section of the Bill of Rights was a constitutional inhibition upon the power of the Legislature to prohibit an individual from bearing arms and that the section of the statute mentioned was in conflict with this constitutional provision, and therefore void. The court held:

"The provision of the Kansas Constitution (Bill of Rights, § 4) that 'the people have the right to bear arms for their defense and security' is a limitation on legislative power to enact laws, prohibiting the bearing of arms in the militia or any other military organization provided for by law, but is not a limitation on legislative power to enact laws prohibiting and punishing the promiscuous carrying of arms or other deadly weapons."

Mr. Bishop in his work on Statutory Crimes, § 793, has this to say on this subject:

"The guaranty to the people of the right 'to keep and bear arms' is largely found in our state Constitutions; in some of them in these words alone, and in others more or less qualified. In reason the keeping and bearing of arms has reference only to war, and possibly also to insurrections wherein the forms of war are as far as practicable observed; yet certainly not to broils, bravado,

and tumult, disturbing the public repose, or to private assassination and secret revenge. Nor are these, in the language of the constitutional provision now under consideration, 'necessary to the security of a free state.' Nor yet are dirks, bludgeons, revolvers, and other weapons which are not used in war 'arms.'"

While not contained in the same paragraph with the provision securing the right to bear arms, as in many of the other Constitutions, section 40 of article 5—section 113 of Bunn's Constitution of Oklahoma—provides: "The Legislature shall provide for organizing, disciplining, arming, maintaining, and equipping the militia of the state." Herein is shown clearly that the Constitution contemplates the maintenance of an armed militia, and, taking this in connection with the other provision and the views expressed by the courts from whose decisions we have quoted,and the history of and ends to be attained by the arms-bearing provision, we believe there is no room for doubt that the arms defendant had a right to bear, and which right could never be prohibited him, relates solely to such arms as are recognized in civilized warfare and not those used by the ruffian, brawler, or the assassin, and we are further convinced that the act of the Legislature under which the defendant in this case was arrested, tried, and convicted was not repealed or in conflict with the terms of the Constitution, but was among the valid enactments in force in the territory of Oklahoma at the time of its admission; was neither repugnant to the Constitution nor locally inapplicable; was extended in force in the state of Oklahoma. Hence the application of petitioner herein should be denied.

Hayes, Kane, and Turner, JJ., concur; Williams, C. J., concurs in conclusion.