1998 OK 133

The STATE of Oklahoma, ex rel., OKLA-HOMA STATE BUREAU OF INVES-TIGATION, Appellee,

v.

Lewis Wayne WARREN, Appellant.

No. 89,049.

Supreme Court of Oklahoma.

Dec. 22, 1998.

As Corrected Dec. 28, 1998.

Rehearing Denied Feb. 2, 1999.

W.A. Drew Edmondson, Attorney General, Gayland G Gieger, Asst. Atty. Gen., Oklahoma State Bureau of Investigation, Alicia Connolly–Lohr, Oklahoma City, Oklahoma, for appellee.

Carolyn S. Smith, Ponca City, Oklahoma, for appellant.

SIMMS, J.

¶ 1 May the State of Oklahoma, through statute, constitutionally deny an application for a concealed handgun license, because the applicant has been indicted by a Federal Grand Jury for the crime of conspiracy to commit arson, arrested and charged for the felony, but he has been acquitted by a jury within three years of the date of the application?

¶ 2 We answer in the negative.

¶ 3 The statute at issue, Tit. 21 O.S.Supp. 1997 § 1290.11(A) provides:

"A. The following conditions shall preclude a person from being eligible for a concealed handgun license pursuant to the provisions of the Oklahoma Self–Defense Act, Section 1290.1 et seq. of this title, for a period of time as prescribed in each of the following paragraphs:

1. An arrest for an alleged commission of a felony offense or a felony charge pending in this state, another state or pursuant to the United States Code. *The preclusive period shall be three (3) years and shall begin upon the final determination of the matter.* (E.A.)

¶ 4 The felony charge was finally determined April 28, 1995, when a petit jury found appellant "not guilty" of the felony, and this issue would become moot with expiration of the three year preclusive period on April 28, 1998. Because this question has a likelihood of recurrence and because of the public interest involved, we invoke the exception to the "mootness doctrine" to answer the question presented. See: *American Ins. Ass'n. v. Indus. Comm'n.,* 1987 OK 107, 745 P.2d 737, 739; *City of Oklahoma City v. Oklahoma Tax Comm'n.,* 1990 OK 27, 789 P.2d 1287, 1297 (dissenting opinion). In addition, we deal with a question of first impression in this jurisdiction.

¶ 5 The facts are not in dispute. In January, 1995, Appellant Warren was arrested and charged by indictment for a felony, conspiracy to commit arson. He was acquitted by jury on April 28, 1995. On March 21, 1996, appellant applied for a concealed handgun license pursuant to the provisions of the Oklahoma Self–Defense Act, 21 O.S. 1290. et seq. (hereafter OSDA). The Oklahoma State Bureau of Investigation denied the application because of the preclusion in § 1290.11(A)(1), supra., formerly 21 O.S.Supp.1995 § 1290.11(1).

¶ 6 An administrative appeal was taken from the decision of the OSBI. The hearing examiner ruled that appellant came within the preclusive provisions of the OSDA and affirmed the decision of the OSBI. Thereafter, an appeal was taken to the District Court which affirmed the decision of the hearing examiner. By order, this appeal was retained in the Supreme Court for adjudication.

¶ 7 In essence, appellant launches a two-pronged attack on the denial of his application for a license to carry a handgun on or about his person. First, the application of the preclusive provisions of OSDA relating to those who have been arrested for a felony, but subsequently acquitted, establishes a constitutionally impermissible class in that there is no rational basis for assuming that all applicants acquitted of all felony charges present more of a threat to society than citizens who have not been arrested. He

argues, therefor, the preclusive provisions of OSDA related to those arrested for a felony but thereafter acquitted, is violative of the 14th Amendment to the United States Constitution, that no state may deny equal protection of the laws to any person within its jurisdiction.

¶ 8  Secondly, appellant takes the position that OSDA violates the due process rights of applicants arrested but found not guilty of an alleged felony because the right to bear arms is a liberty and property interest protected by the due process clauses of the United States and Oklahoma constitutions.

## THE EQUAL PROTECTION ARGUMENT

¶ 9  Tit. 21 O.S.Supp.1995 § 1289.2 defines legislative intent in enacting the "Oklahoma Firearms Act of 1971", which precedes OSDA. Sec. 1289.2, reads: "LEGISLATIVE FINDINGS FOR FIREARMS ACT. The Legislature finds as a matter of public policy and fact that it is necessary for the safe and lawful use of firearms to curb and prevent crime wherein weapons are used by enacting legislation having the purpose of controlling the use of firearms, and of prevention of their use, without unnecessarily denying their lawful use in defense of life, home and property, and their use by the United States or state military organizations and as may otherwise be provided by law, including their use and transportation for a lawful purpose."

¶ 10  Art. II, Sec. 26, Okl. Const. provides: "The right of a citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power, when thereunto legally summoned, shall never be prohibited; but nothing herein contained shall prevent the Legislature from regulating the carrying of weapons." The Second Amendment to the United States Constitution reads: "A well regulated militia, being necessary for the security of a free State, the right of the people to keep and bear arms shall not be abridged".

¶ 11  Oklahoma's constitutional "right to bear arms" provision was construed in *Ex Parte Thomas*, 21 Okl. 770, 1 Okl.Cr. 210, 97 P. 260 (1908) (syllabus) to mean:

"The term 'arms' as used in the Oklahoma Constitution providing that the right of a citizen to carry and bear arms shall never be prohibited, when construed in connection with article 5, § 40, declaring that the Legislature shall provide for organizing, disciplining, maintaining, and equipping the militia of the state, applies solely to such arms as are recognized in civilized warfare, to-wit, guns, swords, bayonets, horsemen's pistols, etc., and not to those used by a ruffian brawler, or assassin, such as pocket pistols, dirks, sword canes, Bowie knives, etc."

Thomas had been charged with carrying a concealed pistol and habeas corpus denied. *Thomas* has been consistently followed and never overruled.

¶ 12  In *Kellogg v. City of Gary*, 562 N.E.2d 685, 692 (Ind.1990), a civil rights action, the City of Gary, Ind., adopted and enforced a policy which denied to all citizens blank handgun permit application forms, while the forms had been routinely available to citizens for the previous ten years. The Supreme Court of Indiana, relying on *United States v. Miller*, (1939) 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206, observed:

"Numerous federal cases have followed Miller, citing it for the proposition that the Second Amendment is not a grant of a right, but a "limitation only upon the power of Congress and the National Government. . . ." (citations omitted). Moreover, the Second Amendment has never been incorporated into the Fourteenth and made applicable to the States. Therefore, there is no right under the Second Amendment to keep and bear arms, such as handguns, which do not have some reasonable relationship to the preservation or efficiency of a well regulated militia." (Page 9)

Appellant cites no common-law authority, nor were we able to find any, which confers upon a citizen the absolute right to carry a concealed handgun on or about their person.

■ ¶ 13  We hold, therefore, there is no absolute common-law or constitutional right to carry loaded weapons at all times and in all circumstances. *Accord: In the Matter of the Application of Atkinson*, 291 N.W.2d 396 (Minn.1980).  An individual's right to keep

and bear arms under a State Constitution (North Dakota) is not absolute, but remains subject to reasonable regulation under the State's police power. *Kasprowicz v. Finck,* 574 N.W.2d 564, 565 (N.D.1998) citing *State v. Ricehill,* 415 N.W.2d 481, 483 (N.D.1987).

¶ 14 The preclusive provisions of the OSDA in this case do not forever bar a citizen from obtaining a hand gun permit, but only provide a three year period must elapse after final disposition of an arrest for a felony before application for the permit may be made. Appellant argues this creates an unconstitutional classification under the Fourteenth Amendment to the Federal Constitution, and Arts. 2, § 7 and Art. 5, § 59, of the Oklahoma Constitution.

¶ 15 In *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992) quoting *McGowan v. Maryland,* 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), Justice Blackmun wrote: "As a general rule, legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws may result in some inequality." Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categories on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification *rationally* further a legitimate state interest. (E.A.) (citation omitted).

¶ 16 In *Application of Atkinson,* 291 N.W.2d 396, 399 (Minn.1980), the Court stated: "There being no absolute common-law constitutional right to carry weapons abroad for individual self-defense, the state may reasonably exercise its police power to regulate the carrying of weapons by individuals in the interest of public safety. Exercise of the state's police power must be upheld unless it bears no relation to public health, safety, morals, or general welfare. The burden is on the person challenging that state's exercise of its police power to establish that no reasonable relationship exists."

¶ 17 In *Edwards v. Basel Pharmaceuticals,* 1997 OK 22, 933 P.2d 298, we held the State of Oklahoma has a legitimate interest in protecting the health and safety of its citizens. It was also written in *McClendoon v. Slater,* 1976 OK 112, 554 P.2d 774, 776 (1976): "It is fundamental that each state and its Legislature, under a Republican form of government possess all power to protect and promote the peace, welfare and safety of its citizens. The only restraints placed thereon are those withdrawn by the United States Constitution and the state's fundamental law."

¶ 18 Appellant, in his brief, concedes that "It is certainly reasonable to assume that a large number of the people who are arrested are guilty of the crime for which they have been arrested." Sure enough, a large number of the people who have been arrested either plead guilty or are found guilty.

¶ 19 While this admission of appellant is true, none the less all defendants in criminal cases are clothed with a presumption of innocence which abides with them until such time as the prosecuting authority has proven their guilt beyond a reasonable doubt, or they have entered a plea of guilty or *nolo contendre.* It is only then the presumption of innocence no longer exists. This "presumption of innocence" is not articulated in our constitution, but is derived from the common law, and enacted into our statutory law, 21 O.S.1991, § 836.[1]

¶ 20 While this statute fixes the burden of proof in a criminal case, "It is a positive legal right appertaining to every accused person, whether guilty or innocent, that he shall not be condemned for a criminal offense in a judicial trial until and unless the evidence produced against him shall be legally sufficient to prove his guilt beyond a reasonable doubt." *Miller v. State,* 3 Okl.Cr. 374, 106 P. 538, 539 (1910); see also, *Cochran v. State,* 4 Okl.Cr. 393, 114 P. 747 (1910). In *Horn v. Territory,* 8 Okl. 52, 56 P. 846, 848 (1899), it was written, "A defendant's friends may forsake him; but the presumption of his

---

1.  22 O.S.1991 § 836 provides: A defendant in a criminal action is presumed to be innocent until the contrary be proved, and in case of reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted.

innocence, never. It is present throughout the entire trial, and, when the jury go to their room to deliberate, the 'presumption of innocence' goes in with them, protesting against the defendant's guilt. And it is only after the jury has given all the evidence in the case a full, fair, and impartial consideration, and have been able to find beyond a reasonable doubt ... that the presumption of innocence leaves him." *Miller*, 106 P. at 539. The language from *Horn* and *Miller* was cited with approval by our Court of Criminal Appeals in *Flores v. State*, 896 P.2d 558, 562 (Okl.Cr.1995).

■ ¶ 21  In this case, because the jury found the defendant "not guilty" of the felony with which he was indicted, as a matter of law he is now, and will be forever more, presumed to be legally innocent of the arson conspiracy charge. There is no allegation or evidence in this record to indicate that a handgun or concealed weapon was in any way connected to or with the indicted offense.

■ ¶ 22  The question then arises, "is there any rational basis for precluding a person who was arrested for a felony where no handgun or concealed weapon was involved and subsequently acquitted by a jury, from applying for a concealed weapons permit under OSDA?"

¶ 23  Neither party refers us to such a case, and independent research discloses but one case where a gun permit was denied where there was an arrest and, apparently no conviction. In *Williams v. Bratton*, 238 A.D.2d 269, 656 N.Y.S.2d 626 (1997), a lawyer was arrested in 1985 for reckless endangerment and discharging a firearm. In 1995, the lawyer applied for a "carry" pistol license. The New York City Police Commissioner, who under New York law has wide discretion in issuing such a license, denied the lawyer's application. The Supreme Court of New York (the equivalent of Oklahoma's District Court) reversed the Commissioner's order of denial. The Appellate Division of that court reversed the lower court and sustained the order of the Commissioner denying the license. The appellate court said at p. 627: "In addition, the circumstances underlying petitioner's 1985 arrest

for discharging his firearm, as the Police Department found, cast doubt on his fitness to possess a concealed weapon."

¶ 24  In *Williams* there existed a *nexus* between the lawyer's prior alleged criminal conduct and his request for a "carry" permit. In the case at bar, there is absolutely no evidentiary connection between the crime for which he was acquitted and a concealed weapon.

■ ¶ 25  We recognize that statutes are presumed to be constitutional, and it is the duty of the Courts to uphold legislative acts unless they plainly and clearly violate the constitution. *Way v. Grand Lake Assoc., Inc.*, 1981 OK 70, 635 P.2d 1010 (Okl.1981). However, a presumptively valid statute may result in an unconstitutional application to a particular person.

¶ 26  In *Associated Industries of Oklahoma, et al. v. Industrial Welfare Commission, et al.*, 185 Okla. 177, 90 P.2d 899 (1939), this Court held in Syllabus 1: "If a legislative act is susceptible of two interpretations, one of which would render the act valid, while the other would subject it to grave doubts upon constitutional grounds, that construction should be adopted which renders the act valid, and frees it from doubts on constitutional considerations." Following the rationale of *Associated Industries*, we do not in this case hold the preclusive provision of OSDA to be unconstitutional. However, we find the three year preclusive provision as it applies to this appellant lacking any rational basis whatsoever because there exists no *nexus* or connection between appellant's arrest for arson conspiracy and any firearm. He should have been able to apply for a handgun license upon his acquittal of the offense.

¶ 27  We save for another day the question of constitutionality of the preclusive provisions of OSDA when the arrest, assuming the defendant be acquitted, is for a crime involving a firearm or other weapon.

¶ 28  It is unnecessary to address appellant's due process argument.

¶ 29  Holding the preclusive provisions of the statute constitutionally invalid as applied

to this appellant, the judgment of the trial court is REVERSED.

KAUGER, C.J., SUMMERS, V.C.J., LAVENDER, and WATT, JJ., concur.

ALMA WILSON, J., concurs and joins OPALA, J. in his concur in result.

OPALA, J., concurs in result.

HODGES, J., dissents: I would dismiss appeal for the reason that the issue is moot.

HARGRAVE, J., dissents: I would affirm the trial court.

OPALA, J., with whom ALMA WILSON, J., joins, concurring in result.

¶1 The court *reverses* today the district court's decision—entered on review of an administrative ruling—which affirmed the agency's denial of *Warren's* application for a concealed weapons' license authorized by the Oklahoma Self–Defense Act [OSDA].[1] According to today's pronouncement, (1) there is no rational basis for withholding a concealed weapons license from a person whose felony arrest (or "final determination") occurred within the last three years of applying, where no nexus was shown between the

1. 21 O.S.Supp.1997 §§ 1290 et seq.

2. The pertinent terms of 21 O.S.Supp.1997 § 1290.11(A) are:
   "A. The following conditions shall preclude a person from being eligible for a concealed handgun license pursuant to the provisions of the Oklahoma Self–Defense Act, Section 1290.1 et seq. of this title for a period of time as prescribed in each of the following paragraphs.
   1. An arrest for an alleged commission of a felony charge pending in this state, another state or pursuant to the United States Code. The preclusive period shall be three (3) years and shall begin upon the final determination of the matter." (Emphasis supplied.)

3. The terms of Art. 2, § 15, Okl. Const., are:
   "No *bill of attainder*, ex post facto law, nor any law impairing the obligation of contracts, *shall ever be passed*. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties." (Emphasis supplied.)

4. For the pertinent terms of 21 O.S.Supp.1997 § 1290.11(A), *see supra* note 2.

critical arrest and some element of improper use (or possession) of a handgun (or of a concealed weapon) and (2) *as applied to Warren,* the bar erected against his license eligibility by the provisions of 21 O.S.Supp.1997 § 1290.11 [2] of OSDA is unconstitutional.

¶2 I write separately to provide the analytical framework for concluding that the provision in contest here, § 1290.11, *facially offends* the Oklahoma Constitution's prohibition against bills of attainder. Art. 2, § 15, Okl. Const.[3]

I

BILL OF ATTAINDER

¶3 Because of a prior disqualifying felony arrest, the Oklahoma State Bureau of Investigation [OSBI or agency] found Warren ineligible for a concealed weapons license. Its ruling plainly rests on § 1290.11(A)'s [4] disqualification of *any person* who had a felony arrest (with a *"final determination"* occurring) within the last three years of applying for a license.[5]

¶4 The question *dispositive of this case* is whether the statutory felony-arrest disqualification constitutes a bill of attainder [6]

5. A *"disqualifying felony arrest"* is one whose final determination occurs within three years of applying for a license. *See supra* note 2.

6. Bills of attainder were commonly used against political groups that the English Parliament found treasonous. Parliament adjudicated activities deemed treasonous and punished them by death. The framers—to whom a bill of attainder doubtless meant an act of the legislature that sentenced a person to death and prevented his heirs from inheriting property—deemed the bill of attainder to be a necessary constitutional guard against legislative encroachment on the judiciary. Jane Welsh, *The Bill of Attainder Clause: An Unqualified Guarantee of Process,* 50 Brook. L.Rev. 77, 83 (1983). In the twentieth century, the U.S. Supreme Court *extended the prohibition* (against bills of attainder) *to all legislative acts that punish, without a trial, either named individuals or easily ascertainable class members. United States v. Lovett,* 328 U.S. 303, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *see also Welsh, supra* at 90–93 (discussing the Court's broadened interpretation of the Bill of Attainder Clause).

The modern definition of a bill of attainder recognizes four distinct components, which are: (1)

interdicted by Art. 2, § 15, Okl. Const.[7] A bill of attainder is a legislative act that inflicts punishment without a judicial trial.[8] The provisions of this State's constitution, which prohibit the legislature from passing a bill of attainder, encompass within their terms a like proscription of bills of pains and penalties.[9] In the attainder context "punishment" means more than imprisonment, fine or a death sentence.[10] It comprehends "a legisla-

tive decree of perpetual exclusion from a chosen vocation" or from some other government-conferred advantage.[11]

¶ 5 Any legislative act disqualifying a person from holding a government job or a license based on a law-making body's declaration of unfitness meted out *without reliance on a concluded judicial proceeding* is nothing short of a bill of attainder that is clad in a more modern attire.[12] Licenses, which

---

a legislative act (2) imposing punishment (3) upon a designated person or class of persons (4) without benefit of judicial trial. Michael P. Lehmann, *The Bill of Attainder Doctrine: A Survey of the Decisional Law*, 5 Hastings Const. L.Q. 767, 790–91 (1978)

**7.** The federal equivalent of this State's prohibition against bills of attainder appears in Art. 1, § 9, cl. 3, U.S. Const. Its terms are:
"No Bill of Attainder or ex post facto Law shall be passed."
The U.S. Constitution's counterpart *targets not only the Congress but also state legislatures.* Art. 1, § 10, cl. 1, U.S. Const. Its terms are:
"*No State shall* enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but· gold and silver Coin a Tender in Payment of Debts; *pass any Bill of Attainder,* ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." (Emphasis supplied.)

**8.** As a general rule, bills of attainder specifically identify persons or classes of persons who are to be deprived of a right as a kind of punishment. *Cummings v. State of Missouri*, 71 U.S. (4 Wall.) 277, 323, 18 L.Ed. 356 (1867) (a priest was barred from practising his profession); *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1867) (a lawyer was barred from federal-court practice); *Lovett, supra* note 6, 328 U.S. at 316, 66 S.Ct. at 1079 (the Court struck down a legislative determination of guilt that resulted in the loss of wages); *United States v. Brown*, 381 U.S. 437, 443, 85 S.Ct. 1707, 1715, 14 L.Ed.2d 484 (1965) (the Court struck down an act that focused upon easily identifiable members of a class (the Communist Party) and imposed on them the sanction of mandatory forfeiture of a job or office). *See also* recent Oklahoma jurisprudence in *Golden v. Okfuskee County Election Bd.*, 1986 OK 57, 723 P.2d 982, 983 (Opala, J., dissenting); *Haley v. Oklahoma Alcoholic Beverage Control Board*, 1984 OK CIV APP 58, 696 P.2d 1046, 1050; *Oklahoma Alcoholic Beverage Control Board v. Seely*, 1980 OK 1989, 621 P.2d 534, 538–39 (Opala, J., concurring in result).

**9.** If the legislatively inflicted punishment be less than death, the enactment is termed a bill of pains and penalties. *Cummings, supra* note 8, 71 U.S. at 323; *Welsh, supra* note 6 at 83.

**10.** *See for instance Flemming v. Nestor*, 363 U.S. 603, 628, 80 S.Ct. 1367, 1382, 4 L.Ed.2d 1435 (1960) (Douglas, J., dissenting) (a Bulgarian immigrant's social security benefits were forfeited because he had been a member of the communist party). The dissent by Douglas, J., quotes from Irving Brant, 363 U.S. at 629, 80 S.Ct. at 1382:

"Address entitled Bills of Attainder in 1787 and Today. Columbia Law Review dinner 1954, published in 1959 by the Emergency Civil Liberties Committee, under the title Congressional Investigations and Bills of Attainder. ' * * * By smiting a man day after day with slanderous words, by taking away his opportunity to earn a living, you can drain the blood from his veins without even scratching his skin.

'Today's bill of attainder is broader than the classic form, and not so tall and sharp. There is mental in place of physical torture, and confiscation of tomorrow's bread and butter instead of yesterday's land and gold. What is perfectly clear is that hate, fear and prejudice play the same role today, in the destruction of human rights in America that they did in England when a frenzied mob of lords, judges, bishops and shoemakers turned the Titus Oates blacklist into a hangman's record. Hate, jealousy and spite continue to fill the legislative attainder lists just as they did in the Irish Parliament of ex-King James.' "

**11.** *Lovett, supra* note 6, 328 U.S. at 315, 66 S.Ct. at 1079; *Brown, supra* note 8, 381 U.S. at 447, 85 S.Ct. at 1715; *Cooper v. Henslee*, 257 Ark. 963, 522 S.W.2d 391, 400 (1975).

**12.** Congress (or a state legislature) *may indeed validly* pass a law decreeing that persons with certain qualities may not hold positions of authority because those qualities would impede governmental purpose or action, *but the Bill of Attainder Clause forbids any legislative assembly from specifying who has those qualities.* In short, the Bill of Attainder Clause prevents *all* law-making bodies from inflicting punishment on specific persons and, in so doing, *guarantees the procedural safeguards of an impartial hearing or judicial trial. Brown, supra* note 8, 381 U.S. at 445, 85 S.Ct. at 1713 (there the Court concluded that the Bill of Attainder Clause prevents the legislature from acting itself as the judge and

create property interests conferred by the government, *cannot be withheld by a process that plainly offends the constitution.*[13]

¶6 Warren's unfitness is rested on no more than *summary police action.* His legislatively declared disqualification from holding a gun license extends to every person who, like him, stood subjected to "felony arrest"[14]—a term that invites agency speculation because it has no measurable parameters except within the framework of forensic standards *invocable only* in an adversarial proceeding pressed for judicial testing of law enforcement's conduct. Warren's arrest apparently failed to pass judicial muster. He was acquitted of the offense for the commission of which he had been apprehended. In short, *his police restraint had been finally adjudged as unassociated with the commission of a felony.*

¶7 I would hence *hold* that the statute in contest is *facially violative* of the fundamental law's prohibition against bills of attainder[15] and would *reverse* the district court's decision (entered on review of the agency's order) with *directions* (a) to set aside the flawed administrative determination of Warren's ineligibility for the license he sought and (b) to direct that the agency proceed in a manner not inconsistent with today's pronouncement.

jury by passing on the blameworthiness of specific individuals).

13. Extant jurisprudence, federal and Oklahoma's, protects holders of various professional licenses and their personal-status credentials whenever the individual's interest at stake in that form of property represents something more substantial than mere loss of (or risk of losing) money. *Johnson v. Board of Governors of Registered Dentists*, 1996 OK 41, 913 P.2d 1339, 1350 (Opala, J., concurring); *Ross v. Peters*, 1993 OK 8, 846 P.2d 1107, 1118–19; *Seely, supra* note 8 at 538–39 (Opala, J., concurring in result); *Addington v. Texas*, 441 U.S. 418, 424–425, 431–432, 99 S.Ct. 1804, 1808–1809, 1812–1813, 60 L.Ed.2d 323 (1979); *Seely, supra* note 8 at 538–399.

14. A *"felony arrest"* has neither *independent* nor *precise meaning in law.* Its *legitimacy* is *neither ascertainable nor definable* apart from judicial testing accomplished in the course of an adversarial setting in which the challenged police action undergoes forensic scrutiny. *Here, a large class of persons is excluded from access to a government-conferred license by legislative declaration of its unfitness that rests upon an utterly amorphous gauge.*

15. For a *comparative evaluation* of characteristics that make legislation appropriate for condemnation *as an attainder* and of those that may subject an enactment to judicial invalidation *as offensive to due process*, see Miller, The Supreme Court and the Uses of History, pgs. 163–165.