2001 OK CIV APP 122

**Robert Duane GILIO, Plaintiff/Appellant,**

v.

**STATE of Oklahoma, ex rel. OKLAHOMA STATE BUREAU OF INVESTIGATION, Defendant/Appellee.**

**No. 94,456.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 20, 2001.

---

M.E. Ferrell, Jr, Ferrell & Bruehl, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

W.A. Drew Edmondson, Attorney General, D. Casey Davis, Assistant Attorney General, Oklahoma City, OK, for Defendant/Appellee.

GOODMAN, Presiding Judge.

¶1 This is Robert Duane Gilio's (Permit Holder) appeal from the trial court's February 24, 2000, order affirming, as modified, a prior administrative order which levied a fine on Permit Holder for a violation of the Oklahoma Self Defense Act, 21 O.S. Supp.2000 §§ 1290.1 through 1290.26(Act). Based upon our review of the evidence and applicable law, we reverse.

## FACTS

¶2 On December 11, 1998, two Carter County Sheriff's deputies arrived at Permit Holder's home to investigate a domestic dispute involving Permit Holder, his daughter, and her husband, who resided with Permit Holder at his home.[1] Upon entry to the home, a deputy asked Permit Holder if there were any firearms present in the home. Permit Holder answered, "No," when, in fact, Permit Holder was carrying a concealed semi-automatic pistol in the waistband of his pants. It is undisputed the pistol was loaded and hidden from sight by Permit Holder's shirt. Permit Holder sat on a couch while the deputies conducted their investigation. During the course of the investigation, one of the deputies spotted the concealed firearm carried by Permit Holder. The deputy retrieved the firearm and asked Permit Holder to leave the house in order to conclude the investigation. Permit Holder asked to retrieve another firearm, located under the couch cushion where Permit Holder had been sitting. It is undisputed Permit Holder had been sitting on the couch within reach of the second firearm during the investigation. The deputies retrieved that firearm, a loaded revolver, as well.

¶3 Upon completion of their investigation, the deputies returned both firearms to Permit Holder. Other than the temporary detention by the deputies to conduct the investigation, Permit Holder was not arrested or charged with any offense. Upon being notified of the incident, appellee Oklahoma State Bureau of Investigation (OSBI) filed two administrative charges against Permit Holder, seeking a $100 fine for failing to inform the deputy that Permit Holder was in possession of the concealed firearms.

¶4 OSBI convened an administrative hearing. Permit Holder was present with his attorney, but did not testify except to establish the fact of his legal residence. OSBI sponsored the two deputies, who testified they had asked Permit Holder about any firearms, but were told none were present.

¶5 On May 12, 1999, the hearing officer found Permit Holder had failed to notify the deputy that he possessed a concealed, loaded firearm and was therefore in violation of a provision of the Act, specifically, 21 O.S. Supp.2000 § 1290.8 (C). Permit Holder was assessed a fine of $50 per firearm, for a total fine of $100. Permit Holder requested a rehearing on May 24, 1999, but this was denied in an order filed August 4, 1999. Permit Holder filed a petition for review of the agency order on September 3, 1999, in the Carter County District Court, pursuant to 75 O.S. Supp.2000 § 318.

¶6 The district court reduced the fine to a single $50 fine, noting that Permit Holder could only be fined for each violation, but not each undisclosed firearm. In all other respects, the district court affirmed the ruling of the administrative officer. Permit Holder appeals. We reverse.

## ISSUE

¶7 Permit Holder raises an equal protection question. Permit Holder contends that a non-permit holder would be under no obligation, and would not be penalized, for failing to inform the deputy that the non-permit holder was carrying a concealed firearm while in the confines of his own home. Permit Holder argues on the other hand that he, as a permit holder, was penalized for failing to inform the deputy of the concealed firearm, carried in the confines of his own home. Permit Holder thus concludes that permit holders and non-permit holders under the same circumstances are treated differently, and thus unconstitutionally.

## STANDARD OF REVIEW

¶8 On an appeal from an administrative decision, the appellate courts at all levels apply the same standard of review directly to the administrative record, without regard to the lower court's decision. 75 O.S. 1991 § 322; *Seely v. Oklahoma Horse Racing Comm'n,* 1987 OK CIV APP 61, 743 P.2d 685. Pursuant to § 322, the reviewing court

---

1. OSBI agrees that Permit Holder owned the residence, but permitted his daughter and son-in-law to reside therein with him. Permit Holder is a cross-country truck driver and resides in the house only a few days each month.

may set aside the decision if the court finds substantial rights of the petitioner were prejudiced because the agency's decision is arbitrary and capricious or that it is clearly erroneous in view of the reliable, material, probative and substantial competent evidence. The reviewing court may not, however, re-weigh the evidence or substitute its judgment for that of the agency on a question of fact. The agency's adjudicative order must be affirmed if the record contains substantial evidence to support the facts upon which the order is based, and if the order is otherwise free of error. *City of Hugo v. State of Oklahoma ex rel. Pub. Employees Relations Bd.*, 1994 OK 134, 886 P.2d 485. As stated by the court there:

> Substantial evidence is more than a scintilla of evidence. It possesses something of substance and of relevant consequence that induces conviction and may lead reasonable people to fairly differ on whether it establishes a case. In determining whether an administrative agency's findings and conclusions are supported by substantial evidence, the reviewing court will consider all the evidence including that which fairly detracts from its weight. However, great weight is accorded the expertise of an administrative agency. On review, a presumption of validity attaches to the exercise of expertise.

*Id.*, 1994 OK 134 at ¶ 10, 886 P.2d at 490 (footnotes omitted).

## ANALYSIS

¶ 9 We need not reach this argument, because we find missing a factual determination crucial to the imposition of the administrative fine. We find the administrative hearing officer failed to find that Permit Holder was carrying a concealed firearm in the confines of his own home *pursuant to the Act,* rather than pursuant to the common law of this State.

¶ 10 We initially note that the Oklahoma Supreme Court in *State ex rel. Oklahoma State Bureau of Investigation v. Warren,* 1998 OK 133, ¶ 13, 975 P.2d 900, 902, has held "there is no absolute common-law or constitutional right to carry loaded weapons at all times and in all circumstances."

¶ 11 The Oklahoma Court of Criminal Appeals in *Pierce v. State,* 1929 OK CR 42, ¶ 2, 275 P. 393, 394, interpreting the United States and Oklahoma Constitutions, held:

> There is but one question raised in the brief of the defendant, and that question is whether or not, under the Constitution and laws of the state [*sic*] of Oklahoma, the defendant had a right to carry a gun on his person while in his own house and yard.

The Court settled the issue by stating:

> As the law now is in this state, a person may lawfully own and possess any of the weapons named in sections 1991, 1992, [pistols and revolvers] and may move such weapons from room to room in their place of residence, but may not wear them on their person and transport them about the yard as shown by the evidence to have been done by the defendant in this case.

*Id.* at ¶ 14, 275 P. at 395.

¶ 12 The Oklahoma Self–Defense Act, 21 O.S. Supp.1998 § 1290.25, states in relevant part:

> The Legislature finds as a matter of public policy and fact that it is necessary to provide statewide uniform standards for issuing licenses to carry concealed handguns for lawful self-defense and self-protection, and further finds it necessary to occupy the field of regulation of the bearing of concealed handguns.... *The Oklahoma Self–Defense Act shall be liberally construed to carry out the constitutional right to bear arms for self-defense and self-protection. The provisions of the Oklahoma Self–Defense Act are cumulative to existing rights to bear arms and nothing in Sections 1 through 25 of this act shall impair or diminish those rights.* (Emphasis added.)

¶ 13 The Oklahoma Supreme Court in *Warren,* 1998 OK 133, ¶¶ 25, 26, 975 P.2d 900, 904, held that

> We recognize that statutes are presumed to be constitutional, and it is the duty of the Courts to uphold legislative acts unless they plainly and clearly violate the constitution. *Way v. Grand Lake Assoc., Inc.,* 1981 OK 70, 635 P.2d 1010 (Okl. 1981) [sic]. However, a presumptively val-

id statute may result in an unconstitutional application to a particular person.

In *Associated Industries of Oklahoma, et al. v. Industrial Welfare Commission, et al.,* 185 Okla. 177, 90 P.2d 899 (1939), this Court held in Syllabus 1: "If a legislative act is susceptible of two interpretations, one of which would render the act valid, while the other would subject it to grave doubts upon constitutional grounds, that construction should be adopted which renders the act valid, and frees it from doubts on constitutional considerations." The legislative intent of the Act as set out in § 1290.25 clearly contemplates that the Act will complement and extend, but not replace, any existing statutes and common law relating to the carrying and concealment of a firearm. It is unnecessary for this court to "apply rules of construction to discern Legislative intent, if the will is clearly expressed." See *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449, 452.

¶ 14 It is clear that while there is no absolute right to carry a loaded, concealed firearm at all times in all places, our courts and legislature have chosen to allow an otherwise qualified citizen of this state to carry a loaded firearm *in their home,* and, if they are a permit holder, to carry a concealed, loaded firearm outside their home, *pursuant to the terms of the Act.* We do not interpret the Act to require a citizen to possess a permit to carry a concealed firearm *within his own home,* because such an interpretation would require us to find that the holding in *Pierce* was in conflict with, and was overruled by, the Act. Indeed the Act, by terms of the expressed legislative intent, was designed to be "cumulative to existing rights" to bear arms. 21 O.S. Supp.1998 § 1290.25.

¶ 15 This interpretation is bolstered by another provision of state law. Title 21 O.S. Supp.2000 § 1289.25, popularly known as the "Make My Day Law," permits a homeowner to use deadly force to repel an intruder. The statute concludes: "The provisions of this section and the provisions of the Oklahoma Self–Defense Act . . . shall not be construed to require any person using a pistol pursuant to the provisions of this section to be licensed in any manner." We conclude that in the case in controversy, Permit Holder clearly could have carried a loaded, concealed firearm *within the confines of his home* under either *Pierce* or the Act.

¶ 16 We agree that if it were proven by the OSBI that Permit Holder was carrying his loaded, concealed firearm *solely* pursuant to the Act, his failure to so notify the deputy was a violation of 21 O.S. Supp.2000 § 1290.8 (C), which states:

It shall be unlawful for any person to fail or refuse to identify the fact that the person is in actual possession of a concealed handgun pursuant to the authority of the Oklahoma Self–Defense Act when the person first comes into contact with any law enforcement officer of this state or its political subdivisions or a federal law enforcement officer during the course of any arrest, detainment, or routine traffic stop. Any violation of the provisions of this subsection shall, upon conviction, be a misdemeanor punishable by a fine not exceeding Five Hundred Dollars ($500.00), by imprisonment in the county jail for a period not to exceed ninety (90) days, or by both such fine and imprisonment. In addition to any criminal prosecution for a violation of the provisions of this subsection, the licensee shall be subject to an administrative fine of Fifty Dollars ($50.00), upon a hearing and determination by the Bureau that the person is in violation of the provisions of this subsection.

¶ 17 The problem in this case, however, is that the OSBI did not establish that Permit Holder did "fail or refuse to identify the fact that the person is in actual possession of a concealed handgun *pursuant to the authority of the Oklahoma Self–Defense Act.*" *Id.* (emphasis added). Rather, the facts in this case establish that Permit Holder failed to identify the fact that he was in actual possession of a concealed firearm, but did not establish whether Permit Holder was acting "pursuant to the authority of the Oklahoma Self Defense Act." *Id.* Before Permit Holder could be subject to an administrative fine pursuant to the Act, it must be established that he is subject to the Act at the time of the alleged violation.

¶ 18 Here, because Permit Holder lawfully could have been carrying the firearm *in his home* without a permit pursuant to existing state law, the Act does not apply. The hearing officer did not make a finding that Permit Holder was acting solely pursuant to the Act, but rather presumed that fact without evidence.

## CONCLUSION

¶ 19 Our review of the record presented, including the transcript of the administrative hearing of April 28, 1999, the applicable law, and the documentary evidence, lead us to conclude that the administrative hearing officer found Permit Holder was carrying a concealed firearm in his home *pursuant to the Act* without evidence to support such a finding. The OSBI did not answer the fundamental question of whether Permit Holder was carrying the concealed firearm pursuant to the Act, rather than carrying the concealed firearm pursuant to existing common law, as announced in *Pierce*. The OSBI therefore did not meet its burden of proving that Permit Holder was in violation of the Act. We do not address the penalties, if any, for failing to truthfully respond to the inquiry of a law enforcement officer. The narrow question we review today is whether the OSBI met its burden of proof to establish that Permit Holder was in fact subject to the Act while carrying a loaded, concealed firearm *in the confines of his own home*. We answer that question in the negative. We do not address the equal protection issue urged by Permit Holder, or the OSBI's construction of the Act. We reverse the district court's February 24, 2000, order.

¶ 20 REVERSED.

¶ 21 REIF, V.C.J., and COLBERT, J., concur.